No. 2022-2090

# United States Court of Appeals

## for the Federal Circuit

KOSS CORPORATION
*Appellant*

v.

BOSE CORPORATION,
*Appellee*

**Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-00297**

## APPELLEE BOSE CORPORATION'S RESPONSE BRIEF

Michael N. Rader
Gregory S. Nieberg
Daniel M. Huttle
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue
New York, NY 10158

Nathan R. Speed
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
BOSTON, MA 02210

*Counsel for Appellee Bose Corp.*

## PATENT CLAIMS AT ISSUE

1.    A wireless headphone assembly comprising:

> first and second earphones, wherein each of the first and second earphones comprises an acoustic transducer;

> an antenna for receiving wireless signals;

> a wireless communication circuit connected to the antenna, wherein the wireless communication circuit is for receiving and transmitting wireless signals to and from the wireless headphone assembly;

> a processor in communication with the wireless communication circuit; and

> a rechargeable battery for powering the wireless headphone assembly,

> wherein the headphone assembly is configured, with the processor, to transition automatically from playing digital audio content received wirelessly by the headphone assembly via a first wireless network to playing digital audio content received wirelessly by the headphone assembly via a second wireless network.

11.    The wireless headphone assembly of claim 1, wherein the processor is configured to transition automatically from playing digital audio content received wirelessly by the headphone assembly via the first wireless network to playing digital audio content received wirelessly by the headphone assembly via the second wireless network based on a signal strength level for the second wireless network.

12.    The wireless headphone assembly of claim 11, wherein the processor is configured to transition automatically from playing digital audio content received wirelessly by the headphone assembly via the first wireless network to playing digital audio content received wirelessly by the headphone assembly via the second wireless network based on whether the signal strength level for the second wireless network is above a threshold level.

# CERTIFICATE OF INTEREST

Case Number:        <u>2022-2090</u>                                        <u>                    </u>

Short Case Caption:    <u>*KOSS Corporation v. Bose Corporation*            </u>

Filing Party:        <u>Bose Corporation, Appellee            </u>

I certify the following information is accurate and complete to the best of my

knowledge.

Date: February 10, 2023        Signature:    <u>*/s/ Michael N. Rader*        </u>
                Name:        Michael N. Rader

1. **Represented Entities**.  Provide the full names of all entities represented by undersigned counsel in this case.

    Bose Corporation

2. **Real Party in Interest**.  Please provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

    None.

3. **Parent Corproations and Stockholders**.  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% more stock in the entities.

    None.

4. **Legal Representatives**.  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

    None**.**

5. **Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or

be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

*Koss Corp. v. Bose Corp.*, 1:20-cv-12193-RGS (D. Mass.);
*Koss Corp. v. PEAG, LLC*, 3:21-cv-01177-CAB-JLB (S.D. Cal.);
*Koss Corp. v. Plantronics, Inc. et. al.*, 4:21-cv-03854-JST (N.D. Cal.);
*Koss Corp. v. Skullcandy, Inc.*, 2:21-cv-00203-DDB-JCB (D. Utah).

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

Not applicable.

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTEREST ................................................................. ii

STATEMENT OF RELATED CASES ...................................................x

INTRODUCTION ...............................................................................1

STATEMENT OF THE ISSUES...........................................................4

STATEMENT OF THE CASE...............................................................5

    A.   The '155 Patent ......................................................................5

        1.   Koss's purported invention. .............................................5

        2.   The challenged claims...................................................7

        3.   The prosecution history.................................................7

    B.   Procedural History Before the Board ................................10

        1.   Bose's Petition and its cited prior art.........................10

            a.   Rezvani and the "transition automatically"
                limitation. ..................................................... 10

            b.   Pelland and the challenged claims' priority date.......... 13

        2.   The pre-trial proceedings and institution decision....................15

        3.   The trial proceedings....................................................17

            a.   Koss's patent owner response. ..................................... 17

                (1)   Koss makes the strategic decision not to
                     address Rezvani's typographical error. ............... 17

                (2)   Koss's expert fails to address the Pelland
                     ground.................................................................. 18

            b.   Bose's Reply.................................................................. 18

                 (1)   Bose and Dr. Williams explain why Rezvani
                     contains an obvious typographical error. ............ 18

                (2)   Bose and Dr. Williams explain why Koss's
                     lone argument regarding Pelland is wrong. ........ 20

            c.   Koss's Sur-Reply. ......................................................... 21

        4.   The final written decision. .......................................21

a.    The Board agrees with Bose that Rezvani has a typo. .................................................................... 21

b.    The Board concludes that Pelland is not prior art. ........ 23

SUMMARY OF THE ARGUMENT ........................................................24

STANDARD OF REVIEW ...................................................................27

ARGUMENT ...................................................................................28

A.    The Board Correctly Found Claims 11 and 12 Unpatentable. ............28

1.    Substantial evidence supports the Board's factual finding that Rezvani contains a typo, and that when read correctly, Rezvani discloses a headset that performs a "seamless handoff." .................................................28

a.    The Board's finding has ample record support. ............ 28

b.    Koss impermissibly asks the Court to reweigh the evidence. ........................................................ 31

2.    Substantial evidence supports the Board's alternative finding that, even if there was no typo, Rezvani nonetheless discloses a headset that performs a "seamless handoff." .................................................37

a.    The Board did not adopt an obviousness theory. .......... 38

b.    Substantial evidence supports the Board's alternative finding. ........................................... 40

3.    Substantial evidence supports the Board's factual finding that Rezvani's "seamless handoff" meets the "transition automatically" element. ..........................................47

a.    The Board did not misconstrue "transition automatically" when it applied the parties' agreed interpretation of the term to Rezvani's disclosure. ........ 48

b.    The record supports the Board's finding that Rezvani's "seamless handoff" occurs without user intervention. ................................................. 50

4.    The Board did not abuse its discretion in considering Dr. Williams' reply testimony regarding Rezvani. .........................53

a.    The Board reasonably permitted Dr. Williams to explain why Rezvani had a typographical error. ........... 53

       b.     The Board reasonably permitted Dr. Williams to explain why, apart from any alleged typos, Rezvani disclosed a headset performing a "seamless handoff." ....................................................... 57

B.     The Board Properly Applied this Court's Precedent Regarding Typographical Errors............................................................58

     1.    This Court's precedent did not require the Board to disregard Rezvani's disclosures as understood by POSAs.......59

     2.    Even if paragraphs 41 and 50 are ignored, Rezvani nonetheless discloses a "headset" that "transition[s] automatically." .........................................................................62

C.     Bose's Pelland-Based Ground Provides an Alternate Basis for Affirmance....................................................................................63

     1.    Absent priority, Pelland is anticipating prior art. ....................63

     2.    Priority is lacking because the Priority Applications only disclose transitions due to lost connection................................63

     3.    The Board's contrary determination lacks support...................65

CONCLUSION ...............................................................................................69

CERTIFICATE OF COMPLIANCE .......................................................................70

# TABLE OF AUTHORITIES

## CASES

*Abbott Lab'ys v. Sandoz, Inc.*,
    566 F.3d 1282 (Fed. Cir. 2009) ............................................................52

*AMC Multi-Cinema, Inc. v. Fall Line Pats., LLC*,
    No. 2021-1051, 2021 WL 4470062 (Fed. Cir. Sept. 30, 2021) ................... 54, 58

*Apple Inc. v. Andrea Elecs. Corp.*,
    949 F.3d 697 (Fed. Cir. 2020) ..............................................................54

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) (en banc) .................................... 27, 64

*Bilstad v. Wakalopulos*,
    386 F.3d 1116 (Fed. Cir. 2004) ............................................................53

*D Three Enters., LLC v. SunModo Corp.*,
    890 F.3d 1042 (Fed. Cir. 2018) ............................................................67

*Everstar Merch. Co. v. Willis Elec. Co.*,
    No. 2021-1882, 2022 WL 1089909 (Fed. Cir. Apr. 12, 2022) ................... 54, 56

*Ex Parte Barthelemy*,
    No. 2003-2023, 2004 WL 4979042 (B.P.A.I. Jan. 21, 2004) ............................61

*Ex Parte Burger*,
    No. 2009-004196, 2009 WL 3497070 (B.P.A.I. Oct. 27, 2009).........................61

*Gemtron Corp. v. Saint-Gobain Corp.*,
    572 F.3d 1371 (Fed. Cir. 2009) .................................................... 34, 36

*ICU Med., Inc. v. Alaris Med. Sys. Inc.*,
    558 F.3d 1368 (Fed. Cir. 2009) .................................................... 64, 68

*Idemitsu Kosan Co. v. SFC Co.*,
    870 F.3d 1376 (Fed. Cir. 2017) ............................................................48

*In re Aspen Aerogels, Inc.*,
    835 F. App'x 587 (Fed. Cir. 2020).........................................................48

*In re Google Tech. Holdings LLC*,
 980 F.3d 858 (Fed. Cir. 2020) ........................................................ 42, 57

*In re Jolley*,
 308 F.3d 1317 (Fed. Cir. 2002) .................................................................27

*In re Watts*,
 354 F.3d 1362 (Fed. Cir. 2004) .................................................................34

*In re Yale*,
 434 F.2d 666 (C.C.P.A. 1970) .............................................. 22, 31, 59

*LG Elecs. Inc. v. ImmerVision, Inc.*,
 39 F.4th 1364 (Fed. Cir. 2022) ........................................... 27, 59, 60, 61

*LizardTech, Inc. v. Earth Res. Mapping Inc.*,
 424 F.3d 1336 (Fed. Cir. 2005) .................................................................64

*Lockwood v. Am. Airlines, Inc.*,
 107 F.3d 1565 (Fed. Cir. 1997) ......................................................... 63, 66

*Nidec Motor Corp. v. Zhongshan Broad Ocean Motor*,
 868 F.3d 1013 (Fed. Cir. 2017) .................................................................49

*Qualcomm Inc. v. Apple Inc.*,
 24 F.4th 1367 (Fed. Cir. 2022) .................................................................61

*Regents of the Univ. of Cal. v. Broad Inst., Inc.*,
 903 F.3d 1286 (Fed. Cir. 2018) .................................................................31

*Research Corp. Techs. v. Microsoft Corp.*,
 627 F.3d 859 (Fed. Cir. 2010) .................................................................64

*SAS Inst. Inc. v. Iancu*,
 138 S. Ct. 1348 (2018) .................................................................16

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
 550 F.3d 1356 (Fed. Cir. 2008) .................................................................61

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
 734 F.3d 1332 (Fed. Cir. 2013) .................................................................68

*Tanabe Seiyaku Co. v. U.S. Int'l Trade Comm'n*,
   109 F.3d 726 (Fed. Cir. 1997) ...............................................................53

*Tronzo v. Biomet, Inc.*,
   156 F.3d 1154 (Fed. Cir. 1998) ...........................................................27

*Westphal v. Fawzi*,
   666 F.2d 575 (C.C.P.A. 1981) ..............................................................68

## STATUTES

35 U.S.C. § 311(b) ...................................................................................61

## OTHER AUTHORITIES

Patent Trial and Appeal Board Consolidated
   Trial Practice Guide (Nov. 2019) ................................................... 56, 61

## RULES

European Patent Convention Rule 43(1)(a)-(b) ........................................9

## STATEMENT OF RELATED CASES

The following cases in which U.S. Patent No. 10,368,155 has been asserted may directly affect or be directly affected by this Court's decision in this appeal:

- *Koss Corp. v. Bose Corp.*, 1:20-cv-12193-RGS (D. Mass.);

- *Koss Corp. v. PEAG, LLC*, 3:21-cv-01177-CAB-JLB (S.D. Cal.);

- *Koss Corp. v. Plantronics, Inc. et. al.*, 4:21-cv-03854-JST (N.D. Cal.);

- *Koss Corp. v. Skullcandy, Inc.*, 2:21-cv-00203-DDB-JCB (D. Utah).

# INTRODUCTION

Koss concedes the Board correctly found most of the challenged claims—including independent claim 1—unpatentable over the Nakagawa reference.  Its appeal focuses on two dependent claims, and presents the straightforward question of whether the Board also correctly found that the Rezvani reference discloses a "*head*set"[1] (rather than a "*hand*set") that performs the "transition automatically" element of unpatentable claim 1, from which the two dependent claims depend.  The Board's factual finding is plainly reasonable, and its unpatentability determination should be affirmed.

Rezvani is uniformly directed to a headset with the "transition automatically" functionality, which Rezvani calls "seamless handoff."  Rezvani's Title, Abstract and Summary all explain that the invention is a headset, not a handset.  Rezvani uses the word "headset" more than 80 times, and all of its claims are directed to a "headset."  As for whether Rezvani's "headset" performs a "seamless handoff," that is precisely what Rezvani's Abstract says, what its claim 36 recites, and what its Figure 8 depicts.

Koss focuses on the appearance of the word "handset" in two paragraphs of Rezvani, and argues that those paragraphs reserved the "seamless handoff" functionality for a handset, not Rezvani's headset.  The Board considered Koss's

---

[1] Emphasis added throughout.

argument.  It also considered Rezvani's full context and testimony from Bose's technical expert, Dr. Tim Williams, explaining why Rezvani's isolated references to "handset" were typographical errors that would have been apparent to persons of ordinary skill in the art (POSAs) who would have mentally substituted "headset" for "handset."  The Board had no contrary testimony to consider from Koss's expert on the issue because Koss chose not to have him address it.  The Board agreed with Dr. Williams and Bose that Rezvani's references to "handset" were obvious errors.  Given Rezvani's plain text and Dr. Williams' reasoned explanation of how POSAs would interpret Rezvani, the Board's conclusion was more than reasonable.

Koss argues that the Board *could* have reached a different conclusion and resolved the typographical-error issue in Koss's favor.  But that is not the question to be resolved.  The relevant question is whether the Board's finding is supported by evidence that reasonable minds could find adequate.  A review of the record before the Board confirms that its finding enjoys such support.

Separately, the Board also found that even if (contrary to fact) Rezvani's reference to a "handset" was not an error, Rezvani nonetheless discloses a "headset" performing a "seamless handoff" because Rezvani includes unambiguous disclosures of its "headset" doing exactly that.  Koss again asks the Court to re-weigh the evidence, but the Board's alternative finding is thoroughly reasonable given Rezvani's text.

Beyond asking the Court to re-weigh the evidence, Koss also tries to manufacture legal and procedural errors that do not exist.  For example, Koss argues the Board misconstrued the term "transition automatically" when it concluded that the term encompasses Rezvani's "seamless handoff."  To the contrary, the Board applied the parties' ***agreed*** interpretation of "transition automatically," and its factual conclusion that the agreed interpretation encompasses Rezvani's "seamless handoff" has substantial evidence support.  Koss separately argues that the Board abused its discretion in considering Bose's reply evidence regarding Rezvani's typo, but allowing Bose to submit evidence responsive to an issue the Board identified in its institution decision and Koss raised in its preliminary and post-institution responses was a reasonable (indeed, routine) exercise of the Board's discretion.

The Board's findings concerning Rezvani merit affirmance of the Board's unpatentability determination.  There is, however, an alternative basis for affirmance as well because claims 11-12 are also anticipated by a different reference: Pelland.

Koss does not dispute that, if Pelland is prior art, it anticipates claims 11-12.  The sole dispute below—whether Pelland is prior art—turned on whether the common specification in the '155 patent's priority chain provides written-description support for Koss's claims.  The Board's finding that it provides such support is not grounded in substantial evidence.  The Court need not necessarily consider this issue, but it nonetheless provides an alternative basis for affirmance.

## STATEMENT OF THE ISSUES

1.      Whether substantial evidence supports the Board's finding that Rezvani discloses a "headset" that meets the "transition automatically" limitation where Koss's counterarguments rely on an obvious typographical error.

2.      Whether substantial evidence supports the Board's finding that even if (contrary to fact) Rezvani did not include an obvious typo, it nonetheless discloses a "headset" that meets the "transition automatically" limitation where other passages in Rezvani explicitly describe a "headset" performing such a transition.

3.      Whether, as an alternative basis for affirmance, substantial evidence supports the Board's written-description finding underlying its conclusion that Pelland is not prior art.

**STATEMENT OF THE CASE**

**A.    THE '155 PATENT**

**1.    Koss's purported invention.**

The '155 patent claims, via a chain of continuation applications, an April 2008 effective filing date.  Appx154 (1:5-30).

The patent relates to wireless headphones and discloses a wireless earphone that streams audio "via ad hoc wireless networks and infrastructure wireless networks," and "transitions seamlessly" from an ad hoc network to an infrastructure network when the earphone loses it connection to the ad hoc network.  Appx154-156 (2:55-58, 4:56-5:27).  Once its ad hoc network connection is lost, the earphone transitions "automatically and seamlessly, without user intervention," to receiving audio via an in-range infrastructure network.  Appx154-156 (2:55-3:3, 5:9-27).

The patent defines an "ad hoc wireless network" as one (such as Bluetooth) over which devices "communicate directly and wirelessly, without using an access point."  Appx155 (3:3-6, 4:56-61).  By contrast, infrastructure wireless networks use "access points to allow a wireless capable device, such as the wireless earphone, to connect to a computer network."  Appx155 (3:6-11).  Home WiFi networks, for example, are infrastructure networks because home WiFi routers are access points connecting wireless devices (*e.g.*, laptops) to the Internet.

The patent's earphone communicates with a digital-audio player (DAP), *e.g.*, iPod, over an ad hoc network like Bluetooth.   Appx154-155 (1:42, 4:26-36, 4:56-66); Appx160 (14:13-14).   The DAP transmits audio to the earphone over the ad hoc network when the devices are "in range" of one another via that network, *e.g.*, when they are in "close proximity."   Appx155-156 (4:56-5:8).

When the devices go out of range of the ad hoc network (*e.g.*, a user wearing the earphone leaves the DAP on a table and walks too far away to maintain a Bluetooth connection), both the earphone and the DAP "transition automatically to communicate over an infrastructure wireless network" that is in range of both devices.   Appx156 (5:9-22).   The transition to that infrastructure network occurs "automatically and seamlessly, e.g., without user intervention."   *Id.*

Koss now concedes that wireless headphones that "transition automatically" from one network to another were known.   For example, Koss no longer disputes that the Nakagawa reference discloses a headphone that transitions automatically from one ad hoc network to another.   Appx14-39.   The only issue Koss currently disputes is whether the Board reasonably interpreted Rezvani to ***also*** disclose a headset that performs an automatic transition.

### 2.    The challenged claims.

Bose challenged claims 1-14.  Appx188.  Koss concedes that claims 1-10 and 13-14 are unpatentable.  This appeal focuses on claims 11-12, which depend from unpatentable claim 1.  Koss Br. 11, 20.

Claim 1 recites a "wireless headphone assembly" comprising conventional components, including a "processor."  Appx162.  Claim 1's last limitation recites:

> [1.g$^2$] wherein the headphone assembly is configured, with the processor, to ***transition automatically*** from playing digital audio content received wirelessly by the headphone assembly via a first wireless network to playing digital audio content received wirelessly by the headphone assembly via a second wireless network.

Appx162.

As Bose's emphasis highlights, [1.g] contains the "transition automatically" element central to Koss's appeal.  Claims 11-12 further narrow that "transition," but Koss has never disputed that claims 11-12 stand or fall with claim 1.

### 3.    The prosecution history.

During prosecution, Koss argued that the prior art cited in an initial rejection failed to disclose [1.g], and the examiner subsequently allowed the claims without comment.  Appx1159-1172; Appx1219-1226; Appx1232-1234.  Of course, Koss now concedes that at least Nakagawa discloses [1.g] and renders (in combination with other prior art) claims 1-10 and 13-14 obvious.

---

[2] Both parties call the "wherein" clause limitation [1.g].  Appx7; Koss Br. 4-5.

Although the prosecution of the '155 patent is only marginally relevant, admissions Koss made during prosecution of related patents are more relevant to the typographical-error issue central to Koss's appeal and to the Board's finding that Rezvani's "seamless handoff" satisfies [1.g]'s "transition automatically" element.

The '155 patent claims priority to PCT/US2009/039754 ("PCT Application," Appx1754-1798), filed in April 2009.  The patent that issued from the European National Phase of the PCT Application is EP 2,272,259 ("'259 patent," Appx1828-1862).

During prosecution of the '259 patent, the European Patent Office (EPO) found that Rezvani anticipates claims including a narrower version of [1.g].[3] Appx1867-1870 (then-pending European claims); Appx1883-1889 (defining Rezvani as "D1").  According to the EPO, Rezvani discloses a "headset" that "perform[s] a **handoff** between [a] mobile phone connection and a wi-fi connection."  Appx1886 (emphasis original).

---

[3] The claims were narrower because, for example, they restricted the "transition automatically" element to transitions that occur when the earphone is out of communication range with a DAP, whereas limitation [1.g] is generic as to what triggers the transition.  Appx1867.

Koss acquiesced to the EPO's rejection and rewrote its pending claims in "two part form with respect to [Rezvani]." Appx1892. As the EPO earlier explained, EPC Rule 43(1)(a)-(b) requires separating the prior art from the invention in a claim by the word "characterized." *See* Appx1887. In re-writing its claim in two-part form, Koss conceded that Rezvani discloses the subject matter before the word "characterized." Koss thus conceded that Rezvani discloses an "earphone," *i.e.*, headset, that "transition[s] automatically" from one network to another when the first network is out of range. Appx1896.

Koss also amended its European specification to describe Rezvani as a "wireless multimedia ***head***set having peer-to-peer networking capability and which is configured for convenient hand off between multiple wireless interfaces." Appx1829 ([0003]); *see also* Appx1891-1894.

Koss's European admissions highlight that, prior to this case, Koss itself (and the EPO) interpreted Rezvani to disclose that a ***head***set, not a ***hand***set, performs a "handoff" between wireless networks, and that [1.g]'s "transition automatically" element encompasses such a handoff.

- 9 -

**B.     PROCEDURAL HISTORY BEFORE THE BOARD**

**1.     Bose's Petition and its cited prior art.**

Bose's Petition included three main grounds, each based on one of Rezvani (Appx2470-2487), Nakagawa (Appx2569-2582), and Pelland (Appx1907-1953). Appx188.  Only the Rezvani and Pelland grounds remain relevant.[4]  Koss Br. 20.

**a.     Rezvani and the "transition automatically" limitation.**

Rezvani discloses a "wireless multi-media headset" that performs "seamless handoff between multiple wireless interfaces" like cellular and WiFi.  Appx2470 (Abstract).  The headset has "[m]ultiple wireless systems" that allow it to operate using different wireless interfaces.  Appx2481 ([0019]); Appx2471 (Fig. 1).

Rezvani omits certain implementation details for its headset (*e.g.*, whether it has a headband or uses earbuds), but Bose's Petition explained that POSAs had reasons to implement Rezvani's headset using any of several well-known designs. *E.g.*, Appx212-213; Appx224-225.  Koss no longer disputes that POSAs had reasons to pursue the various Rezvani-based combinations Bose advanced below.

---

[4] Bose's Petition did not argue that Nakagawa renders claims 11-12 obvious. Appx240-264.

Koss's appeal focuses on limitation [1.g]'s "transition automatically" element.  For that element, Bose pointed to the "seamless handoff" that Rezvani's headset performs.    Specifically, Rezvani's Figure 8 depicts "headset 805" performing "simultaneous operation and seamless handoff":



FIG. 8

To "support simultaneous operation," Rezvani's headset has multiple antennas.  Appx2484 ([0040]).  Figure 8 depicts "headset 805" with multiple antennas (810-1 to 810-N) that allow the headset to perform "simultaneous operation over a cellular system and a Wifi system."  Appx2484 ([0041]).

Rezvani further explains that, "[i]n addition to simultaneous operation," its headset can "support seamless handoff between two systems," *e.g.*, it "could switch a VoIP call from a wide-area wireless network such as Wimax or 3G to a local area network such as Wifi." Appx2484 ([0041]); Appx2485 ([0050]) (similar). A "seamless handoff of a VoIP call between a cellular and Wifi system," Rezvani explains, is illustrated in Figure 8, which depicts "headset 805" performing the handoff. Appx2484 ([0041]); Appx2485 ([0050]).

In addition to Figure 8 and its accompanying disclosure, Rezvani also includes a claim explicitly reciting a "headset" with "means for seamless handoff" between two different wireless systems. Appx2486 (claim 36). Rezvani's Abstract likewise summarizes the "invention" as including "a multiple-antenna wireless multimedia headset with…seamless handoff between multiple wireless interfaces." Appx2470.

Bose's Petition argued that Rezvani's disclosure of a headset performing a "seamless handoff" of a VoIP call between two wireless networks met [1.g]'s "transition automatically" element. Appx219-220. As Bose explained, the '155 patent describes "automatic" transitions as ones that occur "without user intervention." Appx220 (citing Appx154-156 (2:65-66, 3:1-3, 5:21-22)). Bose then explained, citing testimony from Dr. Williams and corroborating prior art, that POSAs understood Rezvani's "seamless" handoff to be an "automatic" transition because the headset itself, not the user, causes the transition to occur. Appx220

(citing Appx1375-1376 (¶¶ 138-139)); Appx2980 ([0037]).  Bose also noted that Koss admitted before the EPO that Rezvani discloses a narrower version of [1.g], including its "transition automatically" element.  Appx220 (citing Appx1839; Appx1377 (¶¶ 140-141)).

### b.    Pelland and the challenged claims' priority date.

Bose separately argued that Pelland anticipates each challenged claim, including claims 11-12.  Pelland is the publication of the PCT Application to which the '155 patent claims priority.  Pelland's disclosure is substantively identical to that of the '155 patent itself, and Koss never disputed that—if prior art—Pelland anticipates all challenged claims.  Appx201-208; Appx505-508; Appx53.

The '155 patent is the eighth in a string of continuations, each sharing a common specification (collectively, the "Priority Applications").  For the Pelland ground, the issue was whether the '155 patent is entitled to claim priority through the Priority Applications, or whether, as Bose argued, the challenged claims are entitled to priority no earlier than the '155 patent's 2018 filing date because the Priority Applications fail to provide adequate written-description support for limitation [1.g].  Appx195-201.

In its Petition, Bose explained that [1.g] was broadly written to capture subject matter the Priority Applications do not describe.  Bose (and Dr. Williams) explained that the Priority Applications' common specification describes the "invention" as a

headphone with the ability to receive audio from a digital-audio player via one network and, ***when out of range of that network***, transition automatically to receive audio via a different network.  Appx196-200; Appx1329-1332 (¶¶ 95-96).  As Bose and Dr. Williams explained, the ***only*** event the specification identifies as triggering the headphone to "transition automatically" from one network to another is the headphone ***losing its initial network connection*** with the data source.  Appx197-199; Appx1329-1332 (¶¶ 95-96).  Bose and Dr. Williams also explained that the specification's limited disclosure is consistent with the claims of Koss's initial PCT Application, first U.S. patent, and first European counterpart patent, each of which claimed transitioning automatically "when the data source ***is not in wireless communication range*** with the earphone via the [initial] ad hoc wireless network."[5] Appx1775; Appx1825; Appx1839; *see also* Appx185; Appx193-194.

In contrast to the "invention" described in the specification and claimed in Koss's original patents, limitation [1.g] is generic as to what triggers the headphone to "transition automatically" from one network to another.  As Bose explained, in suing alleged infringers, Koss argued that [1.g] covers transitions to a second network that occur, not because the first network connection is lost, but because the audio that the second network transmits, *e.g.*, a phone call, has higher priority than the audio the first network transmits, *e.g.*, a movie.  Appx186; Appx3782-3788.  As

---

[5] The other continuations' claims address different subject matter.  Appx1330-1332.

Dr. Williams confirmed, such audio-priority transitions are nowhere contemplated in the Priority Applications. Appx1330-1332 (¶ 96).

Because Koss broadened [1.g] beyond the "invention" disclosed in the Priority Applications, Bose argued that the challenged claims are not entitled to the benefit of those earlier dates and Pelland is anticipatory prior art. Appx195-208.[6]

### 2. The pre-trial proceedings and institution decision.

In its pre-institution response, Koss seized on the fact that paragraphs 41 and 50 of Rezvani literally use the word "handset":

> In addition to simultaneous operation, the **hand**set can support seamless handoff between two systems. For example, the **hand**set could switch a VoIP call from a wide-area wireless network such as Wimax or 3G to a local area network such as Wifi.

Appx2484-2485; *see also* Appx345-346. Koss argued Rezvani lacks [1.g] because its "seamless handoff" is performed by a handset, not a headset. Appx344-347.

For Pelland, Koss argued it was not prior art because the Priority Applications adequately support the challenged claims. Appx333-334. Addressing Bose's contention that the Priority Applications only describe lost network connections as triggering the claimed automatic transition, Koss noted (without explanation) that they also describe transitioning when the network connection "is out of range," "not

---

[6] Bose also argued support was lacking for transitions other than from ad hoc to infrastructure networks. Appx199-200. Bose no longer pursues that argument.

available," not "suitable," or below a "threshold minimum signal strength level." Appx335 (citing Appx156-160 (5:26, 5:27, 6:18, 11:32-12:2, 13:7-19)).

Bose filed a pre-institution reply explaining that Rezvani paragraph 41's reference to a "*hand*set" was "clearly a typographical issue" given that the paragraph describes Figure 8, which only depicts a *head*set 805. Appx384. Bose also pointed out numerous other disclosures in Rezvani—disclosures Koss never addressed—that teach a *head*set performing the "seamless handoff," thus underscoring the typographical nature of paragraph 41's reference to a "*hand*set." *Id.* (citing, *e.g.*, Rezvani's Abstract and claim 36).

The Board instituted trial. Appx408-460. For Rezvani, the Board explained it could not resolve the typo issue at institution, but instructed the parties that: "[a]fter a full trial this issue will be decided." Appx446. It then instituted IPR on the Rezvani grounds because it found that, regardless of any "typo," Bose had identified a sufficient number of other disclosures in Rezvani showing that Rezvani's headset performs [1.g]'s "transition automatically" element. Appx446-447.

The Board, however, "preliminarily" agreed with Koss that the Priority Applications supported the challenged claims, and that Pelland was thus not prior art. Appx458. It nonetheless instituted IPR on the Pelland ground pursuant to *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348 (2018).

- 16 -

### 3.    The trial proceedings.

#### a.    Koss's patent owner response.

Koss filed a post-institution response and a declaration from its expert, Joseph McAlexander.  Appx493-538; Appx8762-8789.

##### (1)    Koss makes the strategic decision not to address Rezvani's typographical error.

Koss and its expert argued that, because Rezvani's paragraphs 41 and 50 use the word "handset," Rezvani fails to disclose a "headset" that performs the seamless handoff.  Appx510-512;  Appx8783-8785 (¶¶ 47-51).  Despite the Board's instruction that the "typo" issue was to be addressed at trial (Appx446), Koss and its expert never addressed it.  Likewise, Koss did not ask Dr. Williams a single question about the issue at his first deposition.  Appx8830-8888.

Koss also argued POSAs would not have moved the "seamless handoff" functionality from Rezvani's handset to its headset, an argument premised on misreading paragraphs 41 and 50 as disclosing a handset performing the handoff. Appx512-514; Appx8786 (¶¶ 54-56).  The argument was puzzling as it was directed at an obviousness theory Bose never advanced.  Bose always maintained that Rezvani's "headset" performs the "seamless handoff," so there was no need to modify the "headset" to include that functionality.

### (2)    Koss's expert fails to address the Pelland ground.

As for Pelland, Koss largely repeated the arguments from its pre-institution response.  Appx505-507.  Despite written description being a fact question, Koss's expert did not address Bose's Pelland ground *at all*.  Appx8762-8789.

### b.  Bose's Reply.

Bose filed a Reply supported by a second declaration from Dr. Williams. Appx545-585; Appx7787-7821.

### (1)    Bose and Dr. Williams explain why Rezvani contains an obvious typographical error.

For Rezvani, Bose explained POSAs would have interpreted Rezvani's references to "*hand*set" in paragraphs 41 and 50 as obvious typographical errors given Rezvani's overall context, and that POSAs would have read the paragraphs to disclose that a "*head*set" performs the "seamless handoff."  Appx568-574.

As Bose explained, Rezvani is focused on a novel *head*set, not a handset. Appx571.  Its title is "High Fidelity Multimedia Wireless Headset."  Appx2470.  Its Abstract describes a "headset" performing "seamless handoff."  Appx2470.  Its claim 36 recites a "headset" with "means for seamless handoff."  Appx2486.  And its Figure 8 depicts "seamless handoff" being performed by "headset 805." Appx2478.  Outside of paragraphs 41 and 50, Bose explained, Rezvani consistently describes its invention as a "headset."  Appx571 (citing Appx2481 ([0015]-[0019]); Appx7797-7799 (¶ 21)).

By contrast, Bose explained, a "handset" is not mentioned in the claims, Abstract or Summary, and is described as an optional device for use with the headset. Appx571 (citing Appx2482-2483 ([0023], [0033]); Appx7796-7797 (¶ 19)).  Dr. Williams confirmed that POSAs would have read Rezvani as a whole to disclose a headset—not a handset—that performs seamless handoff.  Appx7795 (¶ 16).

Although paragraphs 41 and 50 say a "*hand*set" performs "seamless handoff," Dr. Williams explained why the paragraphs themselves make the incorrect nature of that statement apparent.  Appx7795-7799 (¶¶ 17-22).  Paragraph 41 says Figure 8 illustrates embodiments involving "headset 805."  Appx2484.  The paragraph then says the "headset" has antennas allowing it to connect to different networks, which is consistent with paragraph 40's teaching that the "*head*set may advantageously support simultaneous operation on…different wireless interfaces."  Appx2484; Appx7795-7796 (¶ 18).

Paragraph 41 goes on to say: "In addition to simultaneous operation, the *hand*set can support seamless handoff between two systems."  Appx2484.  This abrupt reference to a "handset," Dr. Williams explained, is an obvious error, as the antecedent basis for the "simultaneous operation" in the sentence is the simultaneous operation that paragraphs 40-41 both say the "headset" performs.  Appx7796-7797 (¶ 19).  Notably, before this sentence, Rezvani never describes a "handset" with the ability to support "simultaneous operation."  *Id.*

Dr. Williams further explained that Figure 8, which paragraph 41 describes, only depicts a "headset" performing both the "simultaneous operation" and the "seamless handoff," and that this depiction reinforces his opinion that "handset" in paragraph 41 is a typo.  Appx7797 (¶ 20).  He also explained that paragraph 50 has the same typo that is apparent for the same reasons.  Appx7799 (¶ 22).

Finally, Dr. Williams separately explained that even if paragraphs 41 and 50 were intended to say "handset," "those sentences do not erase and do not create ambiguity in the several additional, unambiguous disclosures in Rezvani of the 'headset' executing the automatic transition between two wireless networks." Appx7792 (¶ 8) (emphasis original).  He walked through those disclosures in detail. Appx7792-7794 (¶¶ 9-14).  He thus established that, even if (contrary to fact) there was no typo, Rezvani still discloses a headset performing a "seamless handoff."

### (2) Bose and Dr. Williams explain why Koss's lone argument regarding Pelland is wrong.

For Pelland, Bose explained that the ***only*** disclosure(s) Koss pointed to in the Priority Applications as purportedly demonstrating that the applicants possessed headphones that automatically transition a network connection for reasons other than a lost connection were disclosures stating that the transition occurs when a network is "out of range," not "suitable," or its signal degrades below a "suitable threshold." Appx578.  But, as Dr. Williams confirmed, those additional disclosures all describe the same thing: a lost network connection.  Appx579; Appx7813-7815 (¶¶ 47-51).

Far from showing that the applicants possessed the broad transition of [1.g], Koss's citations underscore the limited "invention" the applicants actually possessed. Appx579.

### c.    Koss's Sur-Reply.

Koss filed a Sur-Reply in which it faulted Dr. Williams for not contacting Rezvani's inventors to determine the "source and/or veracity of the alleged typos." Appx628.  It also argued that Dr. Williams' testimony regarding Rezvani's typo was improper because it should have been included in his opening declaration. Appx631-633.  For Pelland, Koss did not dispute that the Priority Applications only describe performing an automatic transition when an original network connection is lost, but argued it was entitled to claim an invention "broader than the specific embodiment disclosed in the specification."  Appx637.

### 4.    The final written decision.

The Board's final written decision found Bose had satisfied its burden of proof for its Rezvani-based grounds but not for its Pelland-based ground.

### a.    The Board agrees with Bose that Rezvani has a typo.

The Board began its analysis of Rezvani by agreeing with Bose that Rezvani's reference to "*hand*set" in paragraphs 41 and 50 is a typo.  Appx41.  The Board found that POSAs would have mentally replaced the incorrect term "handset" with the right term "*head*set."  Appx41-43.

The Board found persuasive that paragraphs 41 and 50 both describe Figure 8, which "clearly labels 'headset 805,'" and that paragraph 41 first "references 'a headset 805' *before* referring to '*the* handset.'" Appx42-43 (emphasis original). In other words, the antecedent basis for "the ***hand***set" was plainly "***head***set 805." The Board further observed that Rezvani's remaining description "universally refers" to a headset, not a handset. Appx43. Given these facts, the Board found that "'handset' was an 'obvious typographical error' that 'would be apparent to one of ordinary skill in the art.'" Appx43 (quoting *In re Yale*, 434 F.2d 666, 668-69 (C.C.P.A. 1970)).

The Board also agreed with Bose that, even if paragraphs 41 and 50 had no errors, the absence of errors would "not create ambiguity in the several additional, unambiguous disclosures in Rezvani of the 'headset' executing the automatic transition between two wireless networks." Appx44 (quoting Appx7791-7792 (¶ 8)).

Having determined that Rezvani discloses a "headset" performing a "seamless handoff," the Board rejected Koss's contention that such a handoff fails to satisfy [1.g]'s "transition automatically" element. As the Board explained, the parties agreed that "automatic" means "without user intervention," and the Board found a "seamless handoff" is a transition that occurs without user intervention. Appx13. The Board approvingly cited Bose's evidence confirming that a "seamless handoff" occurs without user input. Appx11-12 (citing Appx2994 ([0278]-[0279]); Appx1376 (¶ 139); Appx7760 ([0006]); Appx7780 ([0047]); Appx7804 (¶ 31)).

### b.    The Board concludes that Pelland is not prior art.

Having found the challenged claims unpatentable (most on multiple grounds), the Board proceeded to address Bose's Pelland ground, concluding that Pelland was not prior art because the challenged claims had written-description support in the Priority Applications.    Appx51-60.    According to the Board, the Priority Applications identified the loss of network connection as one "example" why the headphone would transition automatically to another network, but did not convey to POSAs that the invention was limited to that example.  Appx55-58.

The Board focused on a passage describing the headphone as selecting, from among multiple available networks, the one with the "highest priority."  Appx55; Appx1920-1921 (12:24-13:19).  According to the Board, POSAs would not "have required more than the lost connection example plus the suggestion that network priority would also be a consideration" to understand that the applicants possessed the broad invention recited in [1.g].  Appx58-59.  The Board, however, never addressed Dr. Williams' testimony explaining that the selection of a network with the "highest priority" only occurs ***after*** the original network connection is lost (Appx7808-7810 (¶¶ 39-42)); in other words, the "priority" disclosure concerns selection of a second network to which the headphone will transition—***not*** whether the headphone should make a transition in the first place.

## SUMMARY OF THE ARGUMENT

This Court should affirm the Board's determination that claims 11-12 are unpatentable. The Board's determination rests on two factual findings regarding what Rezvani teaches. Specifically, the Board found that (i) Rezvani discloses a "headset" that performs a "seamless handoff," and (ii) Rezvani's "seamless handoff" meets the parties' agreed construction for [1.g]'s "transition automatically" element. Substantial evidence supports both findings.

On the first factual finding, there are two independent bases for affirmance.

To start, the Board's conclusion that the reference to a "***hand***set" performing a "seamless handoff" in Rezvani's paragraphs 41 and 50 was a typographical error is a reasonable interpretation of Rezvani. The Board considered Rezvani's disclosures as well as testimony from Bose's expert, Dr. Williams, regarding those disclosures. Based on its reasoned evaluation of the evidence, the Board concluded that the reference to a "***hand***set" performing a "seamless handoff" in paragraphs 41 and 50 was a typo and that the intended word was "***head***set." The Board's conclusion has ample factual support in the record, and should be affirmed. *Infra* pp. 28-37. Koss's contention that this Court's precedent required the Board to ***ignore*** Rezvani's disclosure entirely, rather than read it as POSAs would have (*i.e.*, with any typos corrected), contradicts the very cases Koss cites. *Infra* pp. 58-61.

Separately, the Board also reasonably found that even if (contrary to fact) paragraphs 41 and 50 were error-free, Rezvani would still disclose a "headset" that performs a "seamless handoff." Rezvani's Abstract, claim 36, and Figure 8 each state expressly that the "headset" performs a "seamless handoff." Affirmance of the Board's finding that Rezvani's "headset" performs a "seamless handoff" is proper for this reason as well. *Infra* pp. 37-47.

As for the Board's second factual finding—that "transition automatically" encompasses "seamless handoff"—Koss argues the Board committed legal error by misinterpreting "transition automatically." To the contrary, the Board applied the parties' ***agreed*** construction of that term, *i.e.*, a transition that occurs without user intervention. And the Board's subsequent factual determination that the agreed construction encompasses Rezvani's "seamless handoff" enjoys ample support, as Bose introduced evidence uniformly confirming that a "seamless handoff" is one that occurs without user intervention. *Infra* pp. 47-53.

Koss's attempt to manufacture procedural errors in the Board's analysis also fails; the Board acted well within its discretion by permitting Bose to submit reply evidence that responded to issues the Board identified in its institution decision and Koss raised in its preliminary and post-institution responses. *Infra* pp. 53-58.

Finally, although the Court need not reach the issue, Bose's Pelland-based ground provides an alternate basis for affirmance. The Priority Applications disclose earphones that transition from one wireless network to another ***only*** when connection to the first network is lost. The claims, by contrast, broadly cover transitions that occur for any reason—for instance because higher priority audio (*e.g.*, a phone call) is available over a second network. Because the Priority Applications never mention audio-priority transitions, or for that matter any transition not triggered by lost connections, the claims lack written-description support in those applications, making Pelland anticipating prior art. The Board's contrary decision should be reversed. *Infra* pp. 63-68.

## STANDARD OF REVIEW

What the prior art discloses—including whether a reference includes a typographical error—is a factual finding reviewed for substantial evidence support. *LG Elecs. Inc. v. ImmerVision, Inc.*, 39 F.4th 1364, 1371 (Fed. Cir. 2022).

"The substantial evidence standard asks whether a reasonable fact finder could have arrived at the agency's decision." *Id.* at 1371 (cleaned up). "[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

"Decisions related to compliance with the Board's procedures are reviewed for an abuse of discretion," which occurs, for example, if the Board's decision "is clearly unreasonable." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016) (quotations omitted).

For claims to be entitled to an earlier-filed application's filing date, the earlier-filed application must provide written-description support for the later-filed claims. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998). Written description is a fact question. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).

# ARGUMENT

## A.   THE BOARD CORRECTLY FOUND CLAIMS 11 AND 12 UNPATENTABLE.

This Court should affirm the Board's determination that claims 11-12 are unpatentable because substantial evidence supports its factual findings.

### 1.   Substantial evidence supports the Board's factual finding that Rezvani contains a typo, and that when read correctly, Rezvani discloses a headset that performs a "seamless handoff."

#### a.   The Board's finding has ample record support.

In evaluating Bose's argument that "handset" in Rezvani's paragraphs 41 and 50 was a typographical error, the Board carefully considered Rezvani's disclosures and Dr. Williams' testimony explaining how POSAs would have interpreted those disclosures.  Appx41-43 (citing Appx570-573; Appx7795-7799 (¶¶ 15-22)).

The Board first observed that Rezvani's paragraph 41 "describes Figure 8, which clearly labels '*head*set 805.'"  Appx42 (citing Appx7791-7792 (¶ 8)).  As Dr. Williams explained: "Rezvani's paragraph 41 is unambiguous that Figure 8 depicts embodiments of 'head̲set 805,'" and a "'head̲set' is the only device shown in the Figure 8 that performs both simultaneous operations and seamless handoff."  Appx7797 (¶ 20) (emphasis original); Appx7793-7794 (¶ 12) (explaining Figure 8 "is clear on its face" and discloses "Rezvani's head̲set performing the seamless handoff") (emphasis original).  The Board reasonably concluded that Figure 8 discloses precisely what it depicts—a *head*set performing seamless handoff.

- 28 -

The Board went on to explain that Rezvani's paragraph 41 "references 'a headset 805' *before* referring to '*the* handset.'" Appx43 (emphasis original). As Dr. Williams explained, paragraph 41 introduces "headset 805" and describes it as having "a plurality of antennas" and as being depicted in Figure 8. Appx7795-7796 (¶ 18); Appx2484. Paragraph 41 further explains that "headset 805" uses its antennas to connect simultaneously with a "wi-fi access point 820" and a "cellular base station 840" such that a "[VoIP] call handoff between a wi-fi and cellular connection may advantageously be implemented." Appx2484. This simultaneous connection is depicted in Figure 8 and, as Dr. Williams explained, is consistent with paragraph 40, which says the "*head*set may advantageously support simultaneous operation" on multiple wireless networks. Appx2478; Appx2484; Appx7795-7796 (¶ 18).

Having introduced "headset 805" and its "simultaneous" operation functionality, paragraph 41 then states: "In addition to simultaneous operation, *the hand*set can support seamless handoff between two systems." Appx2484. As Dr. Williams explained, the reference to a "*hand*set is abrupt and makes little logical sense in Rezvani's context." Appx7796-7797 (¶ 19). According to Dr. Williams, POSAs "would quickly recognize" there was a typographical error because the antecedent basis for the "simultaneous operation" was an operation paragraph 40 said the "headset" performed and there was no earlier mention of a "*hand*set" in

Rezvani with "simultaneous operation" functionality or even multiple antennas. *Id*. Koss's expert Mr. McAlexander offered no contrary testimony, and the Board reasonably concluded that paragraph 41's reference to a "***head***set 805" ***before*** its reference to "***the hand***set" reinforced that "***hand***set" was a typographical error.

The Board then explained that "Rezvani universally refers to 'headset' and 'handset' is never referenced outside paragraphs 41 and 50." Appx43. The Board cited numerous passages in Rezvani that "universally" refer to Rezvani's "invention" as a ***head***set, not a ***hand***set. *Id.* For example, the Board cited Rezvani's Title: "High Fidelity Multimedia Wireless ***Head***set." Appx2470. It cited Rezvani's Abstract, which says: "The invention provides a multiple-antenna wireless multimedia ***head***set with…seamless handoff between multiple wireless interfaces." *Id.* It cited Rezvani's Figure 1, which illustrates a block diagram of a "headset," and includes functional blocks like VoIP, *i.e.*, the type of call Figure 8 depicts being seamlessly handed off. Appx2471. It cited Rezvani's "Field of the Invention" and "Description of the State-of-the-Art," which identify both the relevant field and art as wireless "headsets." Appx2481 ([0002], [0004]). It cited Rezvani's "Summary," which says the "invention provides a High-Fidelity Multimedia Wireless Headset." Appx2481 ([0015]-[0016]); *see also* Appx2483-2484 ([0033]-[0035], [0038]-[0041]).

Many of these disclosures are the same ones Dr. Williams identified as "unambiguous disclosures in Rezvani of the 'headset' executing the automatic transition between two wireless networks."  Appx7791-7794 (¶¶ 8-14) (emphasis original).  Mr. McAlexander, by contrast, focused only on paragraphs 41 and 50, and never considered whether they included a typo.  Appx8783-8788 (¶¶ 47-61).

Based on the evidence before it, the Board concluded that "'handset' was 'an obvious typographical error' that 'would be apparent to one of ordinary skill in the art.'"  Appx43 (quoting *In re Yale*, 434 F.2d at 668-69).  Given the factual record developed below—which is one-sided given Koss's decision not to have its expert address the typographical-error issue—the reasonableness of the Board's conclusion is self-evident.

### b.    Koss impermissibly asks the Court to reweigh the evidence.

Koss asks the Court to reweigh the evidence and conclude that the Board *could* have found that the reference to a "*hand*set" in paragraphs 41 and 50 was intentional.  Koss Br. 24-29.  But this Court does not "reweigh the evidence" or "ask whether substantial evidence supports fact-findings not made by the Board." *Regents of the Univ. of Cal. v. Broad Inst., Inc.*, 903 F.3d 1286, 1294 (Fed. Cir. 2018).  Instead, the Court asks whether substantial evidence "supports the findings that were in fact made." *Id*.  Here it certainly does, as demonstrated above.

Koss argues that the Board's reliance on Rezvani's Figure 8 was "misplaced." Koss Br. 25. Without disputing that Figure 8 depicts "headset 805" and references a "seamless handoff," Koss argues the figure leaves open the possibility that the "*hand*set" referenced in paragraphs 41 and 50 performs the handoff. Koss Br. 25. To the contrary, as Dr. Williams explained, a "headset" is the only device Figure 8 depicts and POSAs "would have no basis to interpret Figure 8 as depicting an embodiment in which an un-illustrated <u>hand</u>set is controlling the operation that Figure 8 depicts the <u>head</u>set as performing." Appx7797 (¶ 20) (emphasis original). Indeed, the entire purpose of Rezvani's "invention," Dr. Williams explained, was developing a headset with its "own cellular circuitry" that can "communicate over cellular networks…on its own, without" reliance on other devices like handsets. Appx7797-7799 (¶ 21).

Koss's only contrary evidence was Mr. McAlexander's conclusory allegation that there must be a hidden handset controlling "headset 805" in Figure 8 because paragraph 41 "undoubtedly reserved" the "seamless handoff" for the handset. Appx8784-8785 (¶ 51). This bootstrap argument *assumes* paragraph 41's reference to a "handset" is not a typographical error, and therefore it never addresses the salient question of what Figure 8—viewed without consideration of the potential typo—discloses. Only Dr. Williams answered that question. The Board's conclusion that Figure 8 discloses exactly what it depicts is plainly reasonable.

Koss next argues that the Board "erred by imparting significance to the fact that Rezvani's ¶ [0041] uses the word 'headset' before the word 'handset.'" Koss Br. 25.  According to Koss, the "initial portion" of paragraph 41 that uses the word "headset" is describing how the headset "has multiple antennas," and it is a distinct "latter portion" of paragraph 41 that says the "handset, not the headset, supports the seamless handoff."  Koss Br. 25-26.  Again, Koss is asking the Court to reweigh the evidence.

As detailed *supra* pp. 29-30, Dr. Williams explained why paragraph 41's "latter portion" is not distinct from its "initial portion" referencing a "headset 805," but rather intricately connected to that "initial portion."  As Dr. Williams explained, paragraph 41 describes "headset 805" as having multiple antennas which permit the headset to perform "simultaneous operation" over two wireless networks, which is consistent with paragraph 40's description of "the headset" having "simultaneous operation" functionality and with Figure 8's depiction of "headset 805" performing that functionality.  Appx7795-7797 (¶¶ 18-20).  When paragraph 41 then abruptly says that "*[i]n addition to* simultaneous operation, *the hand*set can support seamless handoff between two systems" (Appx2484), POSAs "would quickly recognize" a typo, Dr. Williams explained, because the "simultaneous operation" was an operation Rezvani said the "headset" performed and there was no earlier mention of a "*hand*set" in Rezvani with such functionality.  Appx7796-7797 (¶ 19).

- 33 -

Mr. McAlexander offered no contrary testimony, and therefore Koss is left with only its attorneys' interpretation of paragraph 41, which is not evidence. *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009). The Board's determination to credit Dr. Williams over Koss's attorneys was reasonable.

Koss's third challenge focuses on the Board's determination that Rezvani "universally refers" to a "*head*set" and does not refer to a "handset" outside of paragraphs 41 and 50. Koss Br. 26. As with its other critiques, Koss simply asks the Court to re-weigh the evidence.

Koss does not directly dispute the Board's finding that Rezvani "universally" describes a "headset." As shown *supra* p. 30, Rezvani repeatedly describes the invention as a wireless *head*set, not a handset. Koss instead focuses on the Board's statement that Rezvani "never" refers to a "handset" outside of paragraphs 41 and 50. Koss Br. 26-27. Specifically, Koss notes there are other places in which Rezvani discusses a "handset" apart from paragraphs 41 and 50. *Id.*

To begin, this is a new argument that Koss did not present to the Board and thus forfeited. *In re Watts*, 354 F.3d 1362, 1367-68 (Fed. Cir. 2004). Koss cannot fairly criticize the Board for not discovering "handset" disclosures in Rezvani that Koss itself did not identify until this appeal.

Regardless, Rezvani's mention of a "handset" in certain additional paragraphs is unsurprising given its background explanation that wireless headsets were commonly used "in conjunction with cell phones and VoIP phones," *i.e.*, handsets. Appx2481 ([0004]).  Rezvani recognized handsets existed, but they were, as Dr. Williams explained, "only described by Rezvani as [] ***peripheral device[s]*** that can optionally communicate with Rezvani's 'headset.'"  Appx7796-7797 (¶19) (citing Appx2482-2484 ([0023], [0033], [0039])).

Koss's newly cited "handset" disclosures are consistent with Dr. Williams' explanation because the disclosures merely confirm handsets can communicate with other devices like Rezvani's headset.  *E.g.*, Appx2484 ([0042]) ("peer-to-peer connectivity may be accomplished between a plurality of headsets, handsets, or other network elements"); Appx2479 (Figure 9 depicting handset and headset communicating with a common headset).  None of the isolated instances in which the word "handset" appears describe a handset performing a seamless handoff or simultaneous operation, the two functions Figure 8 depicts Rezvani's "headset 805" performing.  Appx7796-7797 (¶ 19).

Koss also argues that "no reasonable person would conclude that the alleged errors are obvious" because paragraphs 41 and 50 "make sense technically as written and are grammatically correct." Koss Br. 27. But the paragraphs only "make sense" if one ignores the antecedent basis issue that Dr. Williams identified and the Board found persuasive. *Supra* pp. 29-30. As Dr. Williams explained, "the abrupt introduction of 'handset'" in paragraphs 41 and 50 "***makes no sense*** when read in context—the author clearly meant '<u>head</u>set.'" Appx7799 (¶ 22) (second emphasis original). In response, Koss offers the Court only attorney argument, which "cannot rebut…admitted evidence." *Gemtron*, 572 F.3d at 1380.

Koss suggests Dr. Williams agreed paragraphs 41 and 50 make sense as written (Koss Br. 27), but he never did. In the first deposition excerpt (Appx8932-8933), Dr. Williams merely confirmed that mobile phones in 2008 could perform seamless handoffs; he was never asked how (or if) that unremarkable fact impacted his interpretation of Rezvani. In the second excerpt (Appx8933-8934), Dr. Williams ***did not*** admit that "Rezvani's headset could be a mobile phone" as Koss argues. Koss Br. 27. He confirmed that Rezvani's ***hand***set, not its ***head***set, could have been a mobile phone.[7] Appx8933-8934 (21:15-22:10).

---

[7] Koss's counsel's own mistaken substitution of "headset" for "handset" reinforces the reasonableness of the Board's conclusion that Rezvani included a similar typo.

Citing "Occam's Razor," Koss argues it is implausible that Rezvani's drafter had the same typo "in four different places—twice in ¶ [0041] and twice in ¶ [0050]." Koss Br. 27-28. But paragraphs 41 and 50 are essentially identical, and thus it makes sense that the drafter, when copying paragraph 41's text into paragraph 50, mistakenly copied paragraph 41's typo when copying the rest of paragraph 41's text. Appx7799 (¶ 22) (explaining the typos are "nearly identical"); Appx43 ("Paragraph 50 is identical….").

Finally, Koss's suggestion that "hindsight" bias tainted Dr. Williams' testimony because he read the '155 patent before Rezvani is frivolous. Koss Br. 28-29. Of course Dr. Williams first read the '155 patent before analyzing whether its claims were patentable. Koss offers no explanation, let alone legal authority, how an expert in an IPR would proceed other than first reading the challenged patent.

**2.      Substantial evidence supports the Board's alternative finding that, even if there was no typo, Rezvani nonetheless discloses a headset that performs a "seamless handoff."**

Although the Court need not even consider it given the reasonableness of the Board's typo-finding, the Board provided an alternate basis for finding that Rezvani discloses a "headset" that performs a "seamless handoff." Specifically, the Board found that even if Rezvani is typo-free, it nonetheless discloses a headset performing a "seamless handoff" because several other disclosures in Rezvani said as much. Appx44-45. This alternative fact finding has ample evidentiary support.

### a. The Board did not adopt an obviousness theory.

Trying to recast the Board's alternative fact finding as a legal finding, Koss argues the Board adopted an "obviousness theory" premised on POSAs modifying Rezvani's headset to include "seamless handoff" functionality.  Koss Br. 38.  Koss badly misinterprets the Board's decision.

Bose never argued (and the Board never found) that it would have been obvious to modify Rezvani's headset to include the "seamless handoff" functionality that Koss says Rezvani reserves for handsets.  Bose's position throughout the trial was that Rezvani discloses a headset with "seamless handoff" functionality, and thus there was no need to modify the headset.  Appx208-220; Appx567-576.

What Bose did argue, though, is that even if one assumed (wrongly) that paragraphs 41 and 50 lack any typos, Rezvani nonetheless discloses a headset with "seamless handoff" functionality because there were multiple other unambiguous disclosures in Rezvani saying the headset has such functionality.  Appx568-570; Appx7791-7794 (¶¶ 8-14).  Bose's alternative argument mirrored the Board's finding in its institution decision that, regardless of any typographical error, Bose had demonstrated that Rezvani discloses a "headset" that has "seamless handoff" capabilities.  Appx446-447.

It was Bose's alternative argument that the Board was adopting in the portion of the decision that Koss now misconstrues as adopting an obviousness theory. As the Board explained, "even if paragraph 41 is not a 'typo,' the question is whether or not [POSAs] would understand that there is a 'seamless handoff' [in Rezvani] that occurs automatically." Appx44. The Board then said Bose had "provided evidence that a seamless handoff *is taught by* Rezvani," and cited the numerous disclosures in Rezvani—cited by Bose in its Petition—confirming that the "headset" performs the "seamless handoff." *Id.* (citing Appx210; Appx1298 (¶ 39); Appx1353-1355 (¶¶ 106-107); Appx219; Appx2478 (FIG. 8); Appx2485 ([0050]); Appx2486 (claims 32, 36); Appx1374-1375 (¶ 136)). The Board then further cited Dr. Williams' explanation that even if paragraphs 41 and 50 are typo-free, their references to a "handset" "do not create ambiguity in the several additional, unambiguous disclosures in Rezvani of the 'headset' executing the automatic transition between two wireless networks." Appx44 (quoting Appx7791-7792 (¶ 8)).

Koss seizes on the Board's statement that reserving the "seamless handoff" to the handset would not "have prevented [POSAs] from understanding that the claimed 'headset' would have been modified to perform the handoff." Koss Br. 38 (quoting Appx44). Koss characterizes this as an "obviousness theory," but neglects to note that the Board was specifically *rejecting* Koss's puzzling argument that there

was "no motivation to modify Rezvani's headset to support the seamless handoff." Appx512 (cited at Appx44). If that one sentence in the Board's decision used language suggestive of an obviousness theory, it was only because the Board was rejecting Koss's motivation-to-combine theory—a theory created to rebut a strawman obviousness argument that Bose never advanced.

Reasonably read, the Board's decision adopted Bose's alternative argument that, regardless of any potential typo in Rezvani, the reference disclosed a "headset" that performed "seamless handoff." The Board did not adopt an obviousness argument Bose never made.

### b. Substantial evidence supports the Board's alternative finding.

The Board agreed with Dr. Williams that any potential typographical error within Rezvani does not erase the "unambiguous disclosures in Rezvani of the 'headset' executing the automatic transition between two wireless networks." Appx44; *see also* Appx7791-7794 (¶¶ 8-14). Koss argues that "[n]o reasonable person could credit [Dr.] Williams'[] testimony in light of what Rezvani literally states." Koss Br. 39. To the contrary, the Board's conclusion was eminently reasonable given Rezvani's disclosure.

Koss focuses myopically on paragraph 8 of Dr. Williams' reply declaration and argues that none of the disclosures in Rezvani listed by Dr. Williams in that particular paragraph "explain that the headset executes an automatic

transition between wireless networks." Koss Br. 39 (citing Appx7791-7792). As discussed *infra* pp. 46-47, the listed disclosures support Dr. Williams' testimony and the Board's corresponding fact findings, but by starting and ending its analysis with that sole paragraph, Koss ignores other disclosures in Rezvani that the Board cited as teaching that the headset performs a "seamless handoff," and which Dr. Williams discussed in other paragraphs of his declaration. Appx7791-7794 (¶¶ 9-14).

To start, when summarizing Rezvani's disclosure, the Board quoted Rezvani's Abstract and explained that it "discloses a 'wireless multi-media headset with high fidelity sound' that performs 'seamless handoff between multiple wireless interfaces.'" Appx39 (quoting Appx2470). As Dr. Williams explained, the Abstract's disclosure is "unambiguous" and confirms that Rezvani discloses a "headset" that performs the seamless handoff. Appx7793 (¶ 10); *see also* Appx1353 (¶ 105). Koss never addressed Rezvani's Abstract before the Board, leaving Dr. Williams' testimony unrebutted.

On appeal, Koss continues to ignore the Abstract when discussing whether substantial evidence supports the Board's alternative basis for finding that Rezvani discloses a "seamless handoff" (Koss Br. 39-42), but it does finally discuss the Abstract later in its brief. Koss Br. 54. Specifically, Koss argues for the first time that the Abstract is "insufficient" because it "states that the 'invention' provides the

seamless handoff and Rezvani's 'invention' undoubtedly also includes the handset." *Id*. That argument was forfeited because Koss failed to raise it before the Board. *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863-64 (Fed. Cir. 2020). The argument also impermissibly asks the Court to re-weigh the evidence, and the relevant inquiry is whether reasonable factfinders could have read the Abstract as the Board (and Dr. Williams) did. That reading is plainly reasonable given what the Abstract literally says.

In any event, Koss's suggestion that Rezvani's "invention" includes a "handset" lacks support. As Dr. Williams explained, a handset "is only described in Rezvani as a peripheral device that optionally communicates with Rezvani's 'headset.'" Appx7796-7797 (¶ 19). That is why Rezvani's Title and "Field of the Invention" refers to wireless headsets, not handsets. Appx2470; Appx2481 ([0002]). Tellingly, Mr. McAlexander never adopted Koss's current interpretation of Rezvani's Abstract; indeed, he did not discuss the Abstract at all. Appx8783-8788.

Koss also now argues that the Abstract "at most suggests that the headset benefits from the seamless handoff" that the handset performs. Koss Br. 54. That argument also was not raised below and thus is forfeited. It also unreasonably twists the language of the Abstract, which plainly says the "invention provides a…wireless [] headset with…seamless handoff between multiple wireless interfaces." Appx2470. Nothing in the Abstract suggests a handset is involved in the handoff,

and there certainly is nothing making such a reading the only reasonable one the Board could have reached.

In addition to Rezvani's Abstract, when identifying the "evidence" that Bose provided "that a seamless handoff is taught by Rezvani," the Board also cited Rezvani's claims 32 and 36. Appx44. Claim 32 recites a "headset" that has "means supporting simultaneous operation over two or more different wireless systems," and claim 36 limits claim 32's headset to one "including means for seamless handoff of an application between the two systems." Appx2486. As Dr. Williams explained, the two claims—both directed to a headset—provide "yet another unambiguous disclosure—consistent with the Abstract's disclosure []—of Rezvani's headset performing the seamless handoff." Appx7793 (¶ 11); *see also* Appx1374-1375 (¶ 136). Koss never addressed claims 32 and 36 below, leaving Dr. Williams' testimony unrebutted.

Koss now argues for the first time that the means-plus-function nature of claims 32 and 36 obligated Bose to identify precise "structure" within the headset for performing the seamless handoff. Koss Br. 37-38, 54-55. Again, Koss forfeited this argument by not raising it below. Regardless, Bose did identify structure for performing claim 36's seamless handoff—"microprocessor 235" within Rezvani's *head*set. Appx220; Appx1375-1376 (¶ 138); *see also* Appx2472 (Fig. 2); Appx2481

([0020]). This is the same structure—a "processor"—that [1.g] recites as performing the "transition automatically" element.

In addition to Rezvani's Abstract and its claims, the Board also identified Rezvani's Figure 8 as further evidence that Rezvani discloses a "seamless handoff." Appx44. As Dr. Williams explained, Figure 8 "only depicts a 'head set' performing both the 'simultaneous operation' and the 'seamless handoff." Appx7797 (¶ 20) (emphasis original); *see also* Appx1374-1375 (¶ 136). The Board agreed. Appx44. And the figure's plain disclosure—it only depicts "headset 805" performing the handoff—reinforces that conclusion:



FIG. 8

Appx2478.

Koss argues that Figure 8 only "shows that the headset could benefit from the seamless handoff supported by the handset, but it does not disclose that the seamless handoff is executed by the headset."    Koss Br. 41.    The Board's contrary interpretation, however, was plainly reasonable as the figure depicts a headset, not a handset.

Rezvani's Abstract, its claims 32 and 36, and its Figure 8 each (and certainly collectively) provide substantial evidence sufficient to affirm the Board's finding that Rezvani discloses a "headset" that performs a "seamless handoff" even if (contrary to fact) Rezvani lacked any typos.    And although the Board did not separately list out those disclosures when saying it agreed with Dr. Williams' reply testimony that there were unambiguous disclosures in Rezvani of a "headset" that performs a seamless handoff, it *did* separately list the paragraphs in Dr. Williams' original declaration where he relied on the Abstract, claims 32 and 36, and Figure 8 for precisely that proposition.    Appx44 (citing Appx1353 (¶ 105) (discussing the Abstract); Appx1374-1375 (¶ 136) (discussing claims 32 and 36 as well as Figure 8)).    The Board plainly relied on Rezvani's Abstract, its claims 32 and 36, and its Figure 8 when making its factual finding that Rezvani discloses a "headset" that performs a "seamless handoff" even if Rezvani lacked any typos—and those disclosures provide substantial evidence support for that finding.

Turning now to the additional disclosures in Rezvani that Dr. Williams listed in paragraph 8 of his reply declaration—and on which Koss focuses (Koss Br. 39-41)—they too support the Board's finding. Koss is correct that, unlike Rezvani's Abstract, claim 36, and Figure 8, these additional disclosures do not explicitly say the "headset" performs a seamless handoff. Koss Br. 40-41. But they do say (i) Rezvani's invention is a "headset" and (ii) the "headset" has wireless functionality enabling it to connect to multiple wireless networks, a feature necessary for performing a "seamless handoff." They thus reinforce what Rezvani's Abstract, claim 36, and Figure 8 state explicitly—the headset performs a seamless handoff.

For example, paragraphs 15-16 provide a "summary" of the invention, and both describe it as a "headset," not a "handset." Appx2481. Paragraph 16 further explains that the headset has a "plurality of multiple wireless interfaces," meaning it can communicate over multiple wireless networks, which a "seamless handoff" between two wireless networks requires. *Id.* Paragraphs 19-21 are consistent, as each describes components of the "headset," including an "array of antennas" and "[m]ultiple wireless systems." Appx2481-2482. Indeed, paragraph 19 explicitly states, "[t]he headset 100 supports Voice over IP (VoIP) 135 *directly*" (Appx2481), and a VoIP call is the one Figure 8 depicts as being seamlessly handed off (Appx2478). Figures 1-3 are relevant for the same reasons, as they each depict the aspects of the headset that paragraphs 19-21 describe. Appx2471-2473.

As seen above, the disclosures that Dr. Williams listed in paragraph 8 of his reply declaration unambiguously reinforce that Rezvani is not directed to a "handset," as Koss implies, but rather to a novel "headset" with the ability to connect to multiple wireless networks. Those disclosures, in turn, reinforce that when Rezvani says in its Abstract, claim 36, and Figure 8 that the "headset" performs a "seamless handoff" between wireless networks, Rezvani means precisely what it says.

***

Whether because the Board reasonably concluded that Rezvani's paragraphs 41 and 50 contained a typographical error or because the Board reasonably found that Rezvani, even if it contains no errors, nonetheless discloses a "headset" that performs a "seamless handoff," the Board's determination that Rezvani discloses such a "headset" should be affirmed.

### 3. Substantial evidence supports the Board's factual finding that Rezvani's "seamless handoff" meets the "transition automatically" element.

Because substantial evidence supports the Board's finding that Rezvani discloses a "headset" that performs a "seamless handoff," the only remaining question is whether the Board's factual finding that Rezvani's "seamless handoff" is encompassed by [1.g]'s "transition automatically" element was reasonable. It was.

> **a.    The Board did not misconstrue "transition automatically" when it applied the parties' agreed interpretation of the term to Rezvani's disclosure.**

Over the course of several pages, Koss argues the Board misconstrued "transition automatically." Koss Br. 31-38. Koss's argument, however, is not truly directed at the Board's construction of "transition automatically"; rather, Koss's argument is directed at how the Board applied that construction to Rezvani's disclosure. That is a fact question—*i.e.*, what Rezvani discloses to POSAs—reviewed for substantial evidence support; not a legal one, reviewed *de novo*. *Idemitsu Kosan Co. v. SFC Co.*, 870 F.3d 1376, 1379 (Fed. Cir. 2017) ("what the prior art teaches" is a fact question); *In re Aspen Aerogels, Inc.*, 835 F. App'x 587, 589 (Fed. Cir. 2020) (rejecting characterization of issue as one of claim construction where party "merely asserts that the Board must have misunderstood the meaning of the term [] if the Board thought that the prior art included [the term]").

Koss argues that "transition automatically" means the headset transitions from one network to another "without external intervention," such as from a user or another device. Koss Br. 31. Bose *agrees* and said as much in its Petition. Appx220 ("According to the '155 patent, 'automatically' means 'without user intervention.'"); Appx154-156 (2:65-3:3, 5:21-22). Although Bose also said no express construction of the term was needed (Appx195), it did so because the record confirmed Rezvani's "seamless handoff" is a transition that occurs "without user intervention"; thus there

was no need to construe "transition automatically" beyond confirming that it encompasses Rezvani's "seamless handoff." Appx195; Appx220; Appx574-576. While Koss tries to suggest otherwise, the parties *agreed* on the meaning of "transition automatically."[8]

It should come as little surprise that the Board appreciated this: "Both parties *agree*, and the '155 patent all but defines, that 'automatic' means 'without user intervention.'" Appx13. Consistent with this Court's precedent, the Board found "express construction" unnecessary; it was enough to hold that "a 'seamless handoff' is encompassed within the meaning of 'transition automatically.'" *Id.*; *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) (the Board need construe terms "only to the extent necessary to resolve the controversy").

Nevertheless, Koss spends pages suggesting the Board somehow misconstrued "transition automatically." Koss Br. 31-38. For example, it faults the Board for allegedly "constru[ing] 'transition automatically' based on extrinsic

---

[8] Koss has never articulated any difference between "without *user* intervention" and "without *external* intervention." *E.g.*, Koss Br. 35 ("'automatically' means without user intervention"). Regardless, as Dr. Williams explained, Rezvani's headset performs a "seamless handoff" without either form of intervention. Appx7802-7804 (¶¶ 29-31).

evidence in the form of Rezvani." Koss Br. 32. But what Koss really challenges is the Board's *application* of the agreed-upon construction ("without user [or external] intervention") to Rezvani's disclosure. That is a fact question reviewed for substantial evidence support.

> **b.** **The record supports the Board's finding that Rezvani's "seamless handoff" occurs without user intervention.**

On the fact question of whether POSAs would have understood that Rezvani's "seamless handoff" is done without user (or external) intervention, Koss does not mention the evidence underlying the Board's finding. The Board cited numerous prior-art references (and Dr. Williams' testimony regarding them) that confirm a "seamless handoff" was known in the art as one performed without user (or external) intervention. Appx11-12 (citing Appx2994 ([0278]-[0279]); Appx1376 (¶ 139); Appx7760 ([0006]); Appx7780 ([0047]); Appx7804 (¶ 31)); *see also* Appx574-576; Appx7803-7804 (¶ 30) ("[T]he headset—not the user—switches the network that the headset is using."). Koss never addresses this evidence, which plainly constitutes substantial evidence support for the Board's factual finding that Rezvani's "seamless handoff" meets the "transition automatically" limitation.

Unable to find any legal flaw in the Board's adoption of Koss's own proposed construction or any factual flaw in the Board's finding that Rezvani's "seamless handoff" occurs without user (or external) intervention, Koss recycles its contention that Rezvani's paragraphs 41 and 50 do not contain typographical errors.

Specifically, Koss argues that under "the proper construction," *i.e.*, a transition that occurs without user (or external) intervention, and "***assuming* that Rezvani does *not include the errors that the Board found that it includes***, Rezvani does not teach or suggest limitation 1.g" because "Rezvani teaches that the ***hand***set, i.e., an external intervention, supports the seamless handoff for the headset and does the switching between wireless networks."  Koss Br. 36-37; *see also id.* at 29-30.

Koss's argument—couched in terms of claim construction—collapses if the Court agrees with Bose that reasonable factfinders could have concluded that Rezvani's paragraphs 41 and 50 contain typographical errors. *Supra* pp. 28-37.

Moreover, Koss is incorrect when it says "[n]o other portion of Rezvani," beyond paragraphs 41 and 50, "teaches the headset transitioning networks without intervention from the handset." Koss Br. 37.  As the Board correctly observed (Appx39), Rezvani's Abstract squarely says that the "invention provides a multiple-antenna wireless multimedia ***head***set with…seamless handoff." Appx2470; *see also* Appx7793 (¶ 10).  Claim 36 is similar.  It recites a "headset" that "includ[es] means for seamless handoff" between two networks.  Appx2486; *see also* Appx7793 (¶ 11).

As explained earlier, Koss's attempt to explain away the Abstract is both forfeited and relies on twisting the Abstract's language in a way that the Board reasonably rejected.  *Supra* pp. 41-43.  Likewise, as explained earlier, Koss's means-plus-function critique of claim 36's disclosure is also forfeited and meritless.

*Supra* pp. 43-44. The Abstract and claim 36 thus directly refute Koss's contention that "[n]o other portion of Rezvani," beyond paragraphs 41 and 50, "teaches the headset transitioning networks without intervention from the handset." Koss Br. 37.

Finally, although the Board ultimately found Koss's admissions before the EPO unpersuasive, Appx45, Bose respectfully submits that the admissions further confirm the reasonableness of the Board's conclusion that Rezvani's "seamless handoff" meets the "transition automatically" element.[9]

As detailed *supra* pp. 8-9, the EPO interpreted Rezvani to disclose a "headset" that "is designed to perform a handoff" between two wireless networks. Appx1886; *see also* Appx1377 (¶140); Appx7804 (¶ 32). In response, Koss acquiesced to the EPO's rejection and rewrote its pending claims in "two part form" with respect to Rezvani (Appx1892), thereby admitting that Rezvani discloses an "earphone," *i.e.*, headset, that "transition[s] automatically" from one network to another. Appx1896.

Although the Board did not see a need to rely on Koss's EPO admission to conclude that Rezvani discloses [1.g]'s "transition automatically" element

---

[9] The admissions also confirm that, prior to this case, Koss consistently admitted that Rezvani discloses a ***head***set (not a handset) performing a "seamless handoff." *Abbott Lab'ys v. Sandoz, Inc.*, 566 F.3d 1282, 1290 (Fed. Cir. 2009) (relying on patentee's admission in foreign patent)

(Appx45), that admission—which concerns the ***factual*** question of what Rezvani

discloses, and therefore is not dependent on European law—is nonetheless binding.

*Tanabe Seiyaku Co. v. U.S. Int'l Trade Comm'n*, 109 F.3d 726, 733 (Fed. Cir. 1997)

(holding patentee to factual admission to foreign patent office that two chemicals

were not interchangeable); *see also* Appx217-220; Appx575.

### 4. The Board did not abuse its discretion in considering Dr. Williams' reply testimony regarding Rezvani.

Koss argues the Board abused its discretion by considering Dr. Williams'

reply testimony explaining (1) why POSAs would have understood Rezvani to

include typos and (2) how, even assuming there were no typos, there are still

unambiguous disclosures in Rezvani of a headset performing a "seamless handoff."

Koss Br. 44-49. The Board's decision to consider Dr. Williams' testimony was not

"clearly unreasonable," and thus was not an abuse of discretion. *Bilstad v.*

*Wakalopulos*, 386 F.3d 1116, 1121 (Fed. Cir. 2004).

### a. The Board reasonably permitted Dr. Williams to explain why Rezvani had a typographical error.

The crux of Koss's argument regarding Dr. Williams' reply testimony about

the typo is that Bose could have submitted it with the Petition and thus should not

have been allowed to submit it later. Appx44-45. This Court, however, has "made

clear that if the petition asserts that a claim requirement is met, provides a reason

that the assertion is true, and cites evidentiary support for that reason, then reply

material that fairly adds confirmation that the initially presented material does in fact support the assertion is not prohibited new material, but a proper part of the record." *AMC Multi-Cinema, Inc. v. Fall Line Pats., LLC*, No. 2021-1051, 2021 WL 4470062, at *6 (Fed. Cir. Sept. 30, 2021).

That is precisely what happened here—Bose asserted in its Petition that Rezvani discloses a headset performing a "seamless handoff," for support Bose cited paragraph 41 and other disclosures in Rezvani as well as testimony from Dr. Williams, and it then introduced reply testimony from Dr. Williams to confirm that what Bose originally asserted was correct despite Koss's arguments (in its preliminary and post-institution responses) to the contrary. The Board's decision to permit Bose to file reply evidence from Dr. Williams was entirely proper. *See, e.g.*, *Everstar Merch. Co. v. Willis Elec. Co.*, No. 2021-1882, 2022 WL 1089909, at *4 (Fed. Cir. Apr. 12, 2022) (finding "legitimate reply" where "argument on reply directly addresses issues raised in [patent owner's] preliminary response and post-institution response"); *Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 706-707 (Fed. Cir. 2020) (reversing decision to disregard reply evidence that "squarely responds to [the] Patent Owner Response").

Underlying Koss's argument is its speculation that Bose and/or Dr. Williams knew about the typographical error before the Petition was filed, but then made the decision not to address the issue for unknown strategic reason. There is no support for that speculation.

At the oral hearing, the Board asked Bose's counsel why Bose did not address the typographical issue in its Petition, and counsel explained that he simply did not notice it. Appx699-700 (19:10-20:12). Given Rezvani's headset-focused context, counsel simply read "*hand*set" in paragraph 41 as "*head*set," and did not notice the typographical distinction until Koss raised the issue in its preliminary response. *Id.* The Board found counsel's explanation "candid and credible." Appx42.

Koss contends that Dr. Williams admitted he knew Rezvani had a typographical error when he submitted his original declaration. Koss Br. 48-49. But he made no such admission. Consistent with what Bose's counsel said, Dr. Williams testified that when he read paragraph 41 he "interpreted the words of Rezvani as meaning the *head*set is the thing that switches." Appx8959-8960. Koss seemingly wants the Court to conclude that when Dr. Williams said he "interpreted" Rezvani's paragraph 41 to say "headset," he meant that he affirmatively concluded it contained an error rather than mentally substituting "*head*set" for "*hand*set" without even knowing it. Koss could have asked clarifying questions, but chose not to do so.

Koss argues that the Board's consideration of Dr. Williams' testimony was prejudicial because Koss could not submit counter-evidence with its Sur-Reply. Koss Br. 47-48. Koss ignores, however, that the typographical-error issue was raised **before institution** (Appx384), and was identified by the Board in its institution decision as an issue that would be decided after a "full trial." Appx446. Koss thus knew before it filed its post-institution response that the typo issue was in play, but it opted not to have Mr. McAlexander address it when he submitted his post-institution declaration with Koss's Patent Owner Response. Appx8783-8788. That Koss has no expert testimony regarding the typo issue is a consequence of Koss's litigation strategy. Any alleged prejudice was self-inflicted.

Koss was also on notice that Bose could submit expert testimony with its reply addressing the typo-issue. The Board's Consolidated Trial Practice Guide explicitly permits petitioners, like Bose, to submit rebuttal evidence to address "issues discussed in the institution decision." Patent Trial and Appeal Board Consolidated Trial Practice Guide at 73 (Nov. 2019); *see also Everstar Merch. Co.*, 2022 WL 1089909, at *4. That Bose did exactly what the Board's rules permit should not have surprised Koss.

**b.    The Board reasonably permitted Dr. Williams to explain why, apart from any alleged typos, Rezvani disclosed a headset performing a "seamless handoff."**

Koss also says the Board should not have considered Dr. Williams' testimony regarding Rezvani's "unambiguous disclosures" of a headset performing a "seamless handoff."  Koss Br. 44-49; Appx7791-7794 (¶¶ 8-14).  But Koss never previously asked the Board to disregard Dr. Williams' unambiguous-disclosures testimony; Koss always focused on his testimony about the typographical errors. Appx631-633.  Koss forfeited its new objection.  *In re Google*, 980 F.3d at 863.

Regardless, there was a good reason why Koss never raised this objection below—it is fatally flawed.  The allegedly improper testimony merely explained how disclosures that Dr. Williams had cited in his ***original*** declaration—apart from paragraphs 41 and 50—confirmed that Rezvani discloses a headset performing a "seamless handoff."  *See, e.g.*, Appx7791-7792 (¶ 8).  Thus, the relevant paragraphs in Dr. Williams' reply declaration merely reaffirmed his ***prior testimony***.

Koss's repeated claims that Bose did not present "in the petition" its theory "that other portions of Rezvani unambiguously disclose the headset executing the seamless handoff" (Koss Br. 47) are belied by the Board's institution decision.  As explained *supra* p. 16, the Board found Bose's Petition, although "clouded" by the typo issue, had still cited sufficient evidence that Rezvani taught a headset performing a network "transition automatically."  Appx446-447.  In making that

- 57 -

determination, the Board cited the same Rezvani-disclosures that Dr. Williams cited in his original declaration, and which he reaffirmed in his reply declaration. Appx447 (citing, *e.g.*, claim 36, Fig. 8); Appx1374-1375 (¶ 136); Appx7793-7794 (¶¶ 11-12).  Dr. Williams' reply declaration did not introduce a new theory, he merely explained why the Board's institution decision, and his original declaration, were correct.  *AMC Multi-Cinema*, 2021 WL 4470062, at *6.  That Koss deposed Dr. Williams twice on this same subject matter—on his original declaration and again on his reply declaration—underscores the lack of any prejudice.

## B.    THE BOARD PROPERLY APPLIED THIS COURT'S PRECEDENT REGARDING TYPOGRAPHICAL ERRORS.

Koss argues that once the Board determined the reference to "handset" in paragraphs 41 and 50 was a typo, the Board was obligated to disregard those two paragraphs **entirely** as "portions of a prior art reference that include errors are eliminated as prior art and cannot form the basis for invalidating a patent claim." Koss Br. 50.  In other words, Koss argues that the Board—as a matter of law—could not read paragraphs 41 and 50 to disclose a "**head**set," even though POSAs would have read the paragraphs that way, and was instead obligated to read Rezvani as if paragraphs 41 and 50 were deleted entirely.  This Court's precedent imposes no such non-sensical obligation on the Board.

### 1.     This Court's precedent did not require the Board to disregard Rezvani's disclosures as understood by POSAs.

This Court in *LG* and its predecessor court in *In re Yale* both held that when confronted with typographical errors that would be apparent to POSAs, it is "the ***errant information*** [that] cannot be said to disclose subject matter." *LG Elecs.*, 39 F.4th at 1372; *In re Yale*, 434 F.2d at 669 ("Since the listing of $CF_3CF_2CHClBr$ in Clements is an error obvious to [POSA], it cannot be said to describe or suggest that compound to those in the art."). This is because POSAs "would mentally disregard the errant information as a misprint or ***mentally substitute it for the correct information***," thereby leaving the ***errant*** information as if it were not disclosed. *LG Elecs.*, 39 F.4th at 1372; *In re Yale*, 434 F.2d at 668-69 ("Since it is an obvious error, it cannot be said that one of ordinary skill in the art would do anything more than mentally disregard $CF_3CF_2CHClBr$ as a misprint or mentally substitute $CF_3CHClBr$ in its place."). The "mentally substitute[d]" ***correct information***, however, is disclosed and available as prior art.

For example, in *LG*, the prior-art Tada reference included a "Table 5" that listed optical parameters for a lens. 39 F.4th at 1366. The petitioner relied on these parameters to demonstrate that Tada disclosed certain claim elements. *Id.* at 1367. The patent owner's expert, however, explained that POSAs would have recognized that certain parameters in Table 5 were erroneous and that the correct parameters were those set forth in Table 5 of a Japanese application to which Tada claimed

priority.  *Id.* at 1370-71.  The Board found the patent owner's expert persuasive and concluded that "there was a transcription, or copy-and-paste, error in Tada." *Id.* at 1369-71.  The Board did not stop there, though.  It went on to assess whether the "correct [parameters] in Table 5 of the Japanese Priority Application" satisfied the relevant claim elements, and concluded that the correct information did not.  *Id.* at 1371.  This Court affirmed the Board's approach, finding its determination that POSAs "would have substituted [the erroneous parameters] *with the correct information*" to be reasonable and in accordance with this Court's precedent on typographical errors.  *Id.* at 1373.

Here, the Board followed the same approach this Court approved in *LG*.  It too identified an obvious typographical error, *i.e.*, paragraphs 41 and 50 mistakenly said "handset," a word that POSAs would have recognized as a misprint given Rezvani's context.  It too identified the "correct information" that POSAs would have mentally substituted in replace of the errant information, *i.e.*, "handset" should be replaced with "headset."  The Board then—just like the Board in *LG*—assessed whether the reference, when read correctly (*i.e.*, Rezvani read with "headset" substituted in place of "handset") disclosed elements of the challenged claims.  The only difference between the cases is the result: here, when read correctly, Rezvani discloses the "transition automatically" limitation whereas Tada, when read correctly, did not disclose the relevant limitation.  That difference in result is not due

to any legal error the Board committed, but is rather due to the fact that in this case the ***correct information*** discloses the relevant claim element.

The two Board decisions that Koss cites (Koss Br. 51) are both consistent with the Board's approach here and merely reinforce *LG*'s teaching that "***errant information*** cannot be said to disclose subject matter." *LG Elecs.*, 39 F.4th at 1372; *Ex Parte Burger*, No. 2009-004196, 2009 WL 3497070, at *4, *7-8 (B.P.A.I. Oct. 27, 2009) (reversing examiner's reliance on literal disclosure of reference where POSAs would have recognized the literal disclosure was a typo); *Ex Parte Barthelemy*, No. 2003-2023, 2004 WL 4979042, at *2 (B.P.A.I. Jan. 21, 2004) (similar). No case Koss cites stands for the remarkable proposition that factfinders, after concluding that an error exists in a reference and that there is an obvious correction for the error, must ignore what the reference actually discloses to POSAs.

Koss's citations to 35 U.S.C. § 311(b), *Qualcomm Inc. v. Apple Inc.*, 24 F.4th 1367 (Fed. Cir. 2022), and the Trial Practice Guide (Koss Br. 52) are irrelevant as they merely confirm that an IPR must be based on patents or printed publications. Here, Bose's Petition was based on what Rezvani—a printed publication—discloses to POSAs. *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361 n.3 (Fed. Cir. 2008) ("What a prior art reference discloses or teaches is determined from the perspective of [POSAs].").  Dr. Williams' testimony did not ***add*** to Rezvani's disclosure; it explained what POSAs would have understood Rezvani to disclose.

### 2. Even if paragraphs 41 and 50 are ignored, Rezvani nonetheless discloses a "headset" that "transition[s] automatically."

Koss argues that if paragraphs 41 and 50 are ignored, then Bose's invalidity theories "[c]ollapse." Koss Br. 53. The Court need not consider this argument because paragraphs 41 and 50 should not be ignored. *Supra* pp. 58-61.

Regardless, as discussed *supra* pp. 40-47, the Board reasonably concluded that numerous disclosures in Rezvani, apart from paragraphs 41 and 50, independently confirm that Rezvani discloses a "headset" that "transition[s] automatically" between networks. Appx44-45. Koss largely repeats the same arguments regarding Rezvani's Abstract, claim 36, and Figure 8 that Bose discussed *supra* pp. 40-47. For those same reasons discussed above, even if paragraphs 41 and 50 are ignored, Rezvani nonetheless discloses a headset that performs a seamless handoff. Indeed, if paragraphs 41 and 50 are ignored, then there would be no disclosure in Rezvani (erroneous or not) of a "handset" performing a "seamless handoff," and thus Rezvani would *only* disclose a "headset" performing that function. Appx2470 (Abstract); Appx2478 (FIG. 8); Appx2486 (claim 36).

## C.    BOSE'S PELLAND-BASED GROUND PROVIDES AN ALTERNATE BASIS FOR AFFIRMANCE.

Bose's Pelland-based ground provides an alternate basis for affirmance.

### 1.    Absent priority, Pelland is anticipating prior art.

Absent written-description support in the Priority Applications, the challenged claims enjoy priority no earlier than the '155 patent's own 2018 filing, making Pelland anticipating prior art. *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997). Koss does not dispute this. Appx505-508; Appx53.

### 2.    Priority is lacking because the Priority Applications only disclose transitions due to lost connection.

The '155 patent and the Priority Applications—including Pelland—all share the same specification. In evaluating whether the Priority Applications support the '155 patent claims, Bose cited to the '155 patent specification (Appx196), while the Board cited to Pelland (Appx52-59); for simplicity on appeal, Bose will follow the Board's approach and cite to Pelland.

The Priority Applications uniformly describe a "transition" from a first network to a second network that occurs when an earphone(s) goes "out of range" of the first network such that the earphone cannot communicate satisfactorily with a DAP over the first network. Appx1909-1927 (1:24-26, 5:26-30, 6:9-13, 11:32-12:2, 12:10-14, 13:7-15, 13:19-23, 16:29-32, 17:8-14, 17:19-25, 18:15-21, 18:32-19:4, 19:14-28).

The Priority Applications also repeatedly describe transitions due to lost connection as "the present invention" (Appx1909 (1:22-26), Appx1924-1927 (16:20-33, 18:6-21, 19:10-16)), which negates possession of a broader invention. *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 872 (Fed. Cir. 2010) (written description lacking for claims broader than what specification called "the present invention").

Dr. Williams explained that transitions for other reasons (*e.g.*, because a second network provides higher-priority audio) are not only absent from the Priority Applications; they would be inconsistent with the patent's focus on addressing lost connections. Appx1329-1336 (¶¶ 95-99).

Accordingly, the Priority Applications do not "clearly allow" POSAs to recognize that the inventors possessed a "transition" not based on lost wireless connection—let alone one based on audio-source priority, which is never mentioned in the Priority Applications, but which Koss nonetheless contends its claims encompass. *Ariad*, 598 F.3d at 1351; *ICU Med., Inc. v. Alaris Med. Sys. Inc.*, 558 F.3d 1368, 1378 (Fed. Cir. 2009) (specification described "only medical valves with spikes" while claims covered "medical valves generically"); *LizardTech, Inc. v. Earth Res. Mapping Inc.*, 424 F.3d 1336, 1344 (Fed. Cir. 2005) ("specification provide[d] only one method" while claims covered others); Appx186; Appx3782-3788.

### 3.    The Board's contrary determination lacks support.

In reaching a contrary conclusion, the Board could not cite any testimony from Koss's expert, who did not address the Pelland ground at all.   Appx8762-8789. Instead, the Board cited Koss's attorney argument regarding Figure 6 of the Priority Applications.   Appx55 (quoting Appx505-506); *see also* Appx58.   That figure depicts a "process" for implementing the invention's "transition automatically" functionality.  Appx1910; Appx1920-1922 (12:24-14:2).

Koss's attorneys summarized Figure 6's process as follows:

"*[W]hen* the headphone assembly *is not communicating* via an ad hoc wireless network (block 61), it can transition to a highest priority infrastructure wireless network (block 63) and keep transitioning to other infrastructure networks by priority order *when* the current infrastructure wireless network *is not 'ok'* (block 65, feedback back to blocks 61 and 63)."

Appx505-506 (citing Appx1920-1921 (12:24-13:19); Appx1947 (Fig. 6)).

The Board agreed with Koss's description (Appx55) and said the Priority Applications' reference to "highest priority" networks confirmed that the Priority Applications "describe transitions based on network priority." Appx58.  However, the Board (and Koss's attorneys) fundamentally misapprehended the passage. Appx1921 (13:7-22).

As Bose's emphasis above highlights, even Koss's description of Figure 6 recognizes that the headphone's transition to a "highest priority" network only occurs *when* the headphone is "not communicating" with its original network

connection or that connection is "not 'ok.'"  By Koss's own admission, the headphone considers priority when determining to which second network it will transition, but the only factor the headphone considers when determining ***whether to transition*** is whether its current network connection has been lost.  Only the latter determination is relevant to the "transition automatically" element of limitation [1.g].  Dr. Williams corroborated this understanding of Figure 6, and Koss offered no rebuttal.  Appx7808-7810 (¶¶ 39-42).  Contrary to the Board's interpretation, therefore, Figure 6 only ***reinforces*** the lack of any support for transitions for a reason other than lost network connection.  No other interpretation of Figure 6 is plausible.

The Board said Dr. Williams testified that POSAs would have understood that network transitions can be based on audio priority.  Appx58 (citing Appx1330-1332 (¶ 96)).  But the cited testimony squarely says that "[t]he common specification ***never suggests***" such transitions.  Appx1330-1332 (¶ 96).  That audio-priority transitions might be an obvious implementation of the "invention," does not contradict Dr. Williams' testimony that such transitions are not disclosed. *Lockwood*, 107 F.3d at 1571-72 ("Entitlement to a filing date does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed.").

The Board also relied on Koss's representation that generic statements in the Priority Applications—that "other wireless communication protocols may be used,"

and that Figure 6 describes "various embodiments of the present invention," Appx55-56—somehow offer written-description support for claims covering transitions based on factors other than a lost network connection. That various wireless communication protocols may be used says nothing about the reasons for transitioning between networks. Appx7811 (¶ 43). That Figure 6 describes "various embodiments" is simply irrelevant since no other embodiments are disclosed. *D Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042, 1051 (Fed. Cir. 2018) ("boilerplate language" is "not sufficient to show adequate disclosure").

There is no disclosure in Figure 6, or anywhere else in the Priority Applications, of a transition between networks that occurs for a reason other than a lost connection to the first network—*a fortiori* there is no disclosure of a transition that occurs because audio from one network has higher priority than audio from a second network, which is the functionality Koss accused of infringement. Appx3672 (¶ 72); Appx3788.

This case presents a common scenario, in which a patentee initially pursues claims directed to the invention described in the specification, then years later secures broader claims, unsupported by the specification, for the purpose of accusing others of infringement. Koss originally (and repeatedly) claimed an earphone that transitions from a first network to another "when the data source is not in wireless communication with the earphone via the [first] network." Appx1775-1780 (initial

PCT application); Appx1825-1826 (first U.S. patent); Appx1839-1840 (first European patent); Appx7883-7884 (depicting timeline). It was only a decade later that Koss sought and obtained the broader claims it now argues cover transitions based on audio-source priority, a technology nowhere described in the Priority Applications. In similar scenarios, this Court has found written description lacking. *See, e.g.*, *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013) (claims reciting genericized "openings," filed five years after earlier claims reciting "grooves," lacked written-description support); *ICU*, 558 F.3d at 1377 ("spikeless" claims, filed "years later during prosecution," lacked written description where specification repeatedly touted spikes and earlier claims required spikes).[10] Because claims 11-12 lack written-description support in the Priority Applications, Pelland is prior art and anticipates the claims.

---

[10] The Board referred to the now-defunct "late claiming" doctrine when addressing Bose's argument. Appx59; *Westphal v. Fawzi*, 666 F.2d 575, 577 (C.C.P.A. 1981). Written description is a completely different issue, and this Court has frequently noted the delay in presenting broad claims in cases where such claims were found to lack written-description support.

## CONCLUSION

Either because the Board's treatment of the Rezvani-based ground was correct or, alternatively, because the Board's rejection of Bose's Pelland-based ground was erroneous, the Final Written Decision should be affirmed.

Respectfully submitted,

Date:  February 10, 2023

*/s/ Michael N. Rader*
Michael N. Rader
Gregory S. Nieberg
Daniel M. Huttle
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue
New York, NY 10158

Nathan R. Speed
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
BOSTON, MA 02210

*Counsel for Appellee Bose Corporation*

# CERTIFICATE OF COMPLIANCE

I, Michael N. Rader, counsel for Appellee, certify that the foregoing brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(b) and Fed. Cir. Rule 32(a).  Specifically, this brief contains 13,978 words (excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b)) as determined by the word count feature of the word processing program used to create this brief.

I further certify that the foregoing brief complies with the typeface requirements set forth in Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).  Specifically, this brief has been prepared using a proportionally spaced typeface using Microsoft Word 2010, in 14-point Times New Roman font.

 Date: February 10, 2023                 */s/ Michael N. Rader*_____
                                         Michael N. Rader
                                         WOLF, GREENFIELD & SACKS, P.C.
                                         605 Third Avenue
                                         New York, NY 10158

                                         *Counsel for Appellee Bose Corporation*

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that a true and correct copy of the foregoing **Response Brief for Appellee** has been electronically filed with the Clerk of Court using the CM/ECF system, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including principal counsel for Appellant.

Date: February 10, 2023           */s/ Michael N. Rader*
                                  Michael N. Rader
                                  WOLF, GREENFIELD & SACKS, P.C.
                                  605 Third Avenue
                                  New York, NY 10158

                                  *Counsel for Appellee Bose Corporation*