**2022-2090**

# United States Court of Appeals for the Federal Circuit

KOSS CORPORATION,

*Appellant,*

– v. –

BOSE CORPORATION,

*Appellee.*

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-00297*

## REPLY BRIEF FOR APPELLANT

MARK G. KNEDEISEN
CHRISTOPHER M. VERDINI
MICHELLE WEAVER
RAGAE GHABRIAL
BRIAN P. BOZZO
LAURÉN S. MURRAY
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
(412) 355-6500
mark.knedeisen@klgates.com
christopher.verdini@klgates.com
michelle.weaver@klgates.com
ragae.ghabrial@klgates.com
brian.bozzo@klgates.com
lauren.murray@klgates.com

*Counsel for Appellant*

MARCH 17, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

I.     INTRODUCTION ........................................................................1

II.    NO SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S
       DECISION THAT CLAIMS 11 AND 12 ARE UNPATENTABLE ............3

       A.     No Reasonable Person Would Accept Williams's Testimony .............3

       B.     Rezvani Does Not Satisfy Limitation 1.g if Rezvani is
              Assumed Not to Include Errors............................................11

       C.     The Board's Alternative Obviousness Theory is Flawed ..................14

       D.     The Board Abused its Discretion by Considering Williams's
              Reply Declaration................................................................16

III.   *LG ELECS*. AND *YALE* DID NOT CORRECT A PRIOR ART
       REFERENCE TO MAKE A PATENT CLAIM UNPATENTABLE ..........20

IV.    SUBSTANTIAL EVIDENCE SUPPORTED THE BOARD'S
       DETERMINATION THAT PELLAND DOES NOT ANTICIPATE
       THE CHALLENGED CLAIMS ..................................................23

       A.     The Board's Decision.........................................................24

       B.     Ample Evidence Supports the Board's Conclusion............................26

       C.     Bose Relies on Easily Distinguishable Case Law..............................28

V.     CONCLUSION.............................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*AMC Multi-Cinema, Inc. v. Fall Line Pats., LLC*,
 No. 2021−1051, 2021 WL 4470062 (Fed. Cir. 2021) ........................... 16, 17

*Aqua Prod., Inc. v. Matal*,
 872 F.3d 1290 (Fed. Cir. 2017) ...................................................13

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
 598 F.3d 1336 (Fed. Cir. 2010) ...................................................23

*B. Braun Med., Inc. v. Abbott Labs.*,
 123 F.3d 1419 (Fed. Cir. 1997) ...................................................13

*Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*,
 8 F.4th 1331 (Fed. Cir. 2021) .....................................................23

*Holigic, Inc. v. Smith & Nephew, Inc.*,
 884 F.3d 1357 (Fed. Cir. 2018) ...................................................28

*Hynix Semiconductor Inc. v. Rambus Inc.*,
 645 F.3d 1336 (Fed. Cir. 2011) ...................................................29

*ICU Med., Inc. v. Alaris Med. Sys. Inc.*,
 558 F.3d 1368 (Fed. Cir. 2005) ...................................................29

*In re Barthelemy*,
 Appeal No. 2003−2023, 2004 WL 4979042 (B.P.A.I. Jan. 21 2004) ..........22

*In re Burger*,
 Appeal No. 2009−004196 (B.P.A.I. Oct. 27, 2009) .....................................22

*In re Castan*,
 Appeal No. 2016−008209 (P.T.A.B. Oct. 5, 2017) .....................................22

*In re Darr*,
 Appeal No. 2011−011436, 2013 WL 5740866
 (P.T.A.B. Oct. 21, 2013) .................................................................22

*In re Ehrlich*,
 Case No. 2009−005874, 2010 WL 1250670 (B.P.A.I. Mar. 9, 2010) ..........22

*In re Fanning*,
    Appeal No. 2012−011674, 2014 WL 4228078
    (P.T.A.B. Aug. 25, 2014) ................................................................22

*In re Masini-Eteve*,
    Appeal No. 2017−003027 (P.T.A.B. Nov. 11, 2018).................................22

*In re Nicolaos*,
    Appeal No. 2009−00189, 2009 WL 3048590
    (B.P.A.I. Sep. 23, 2009) ...............................................................22

*In re Nutalapati*,
    Appeal No. 2018−004192 (P.T.A.B. July 29, 2019)..................................22

*In re Rasmussen*,
    650 F.2d 1212 (Fed. Cir. 1981) .......................................................27

*In re Vickers,*
    141 F.2d 522 (C.C.P.A. 1944)........................................................27

*In re Yale*,
    434 F.2d 666 (C.C.P.A. 1970) ........................................................21

*Incase Designs Corp. v. Tech Shell, Inc.*,
    Appeal No. 2013−009127 (B.P.A.I. Sept. 13, 2013) .................................22

*Incase Designs Corp. v. Tech Shell, Inc.*,
    Appeal No. 2014−002671 (B.P.A.I. May 30, 2014) ..................................22

*Innogenetics, N.V. v. Abbott Labs.,*
    512 F.3d 1363 (Fed. Cir. 2008) .......................................................15

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
    175 F.3d 985 (Fed. Cir. 1999) ........................................................27

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007).....................................................................15

*LG Elecs. Inc. v. Immervision, Inc.*,
    39 F.4th 1364 (Fed. Cir. 2022) ...................................................20-21

*LizardTech, Inc. v. Earth Res. Mapping Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005) .......................................................29

*Nike, Inc. v. Adidas AG,*
    812 F.3d 1326 (Fed. Cir. 2016) ................................................. 13, 19

iii

*OSI Pharms., LLC v. Apotex Inc.*,
  939 F.3d 1375 (Fed. Cir. 2019) ...................................................23

*Research Corp. Techs. v. Microsoft Corp.*,
  627 F.3d 859 (Fed. Cir. 2010) ............................................. 28, 31

*Rivera v. Int'l Trade Comm'n*,
  857 F.3d 1315 (Fed. Cir. 2017) ..................................................24

*ScriptPro LLC v. Innovation Assocs., Inc.*,
  833 F.3d 1336 (Fed. Cir. 2016) ..................................................29

**Statutes & Other Authorities:**

35 U.S.C. § 316(e) ....................................................................23

PTAB Consolidated Trial Practice Guide (Nov. 2019) .............................................2

## I.    INTRODUCTION

In its Petition for the '155 Patent, Bose ignored the express language of its key prior art reference, Rezvani, because to acknowledge what Rezvani actually says would be fatal to Bose's Rezvani-based invalidity challenges.  After institution and after Koss filed its Patent Owner Response ("POR"), Bose for the first time, tried to explain away its disregard for the language of Rezvani, which the Board erroneously adopted in its FWD.  In this appeal, Bose continues to treat Rezvani as if it does not state what it literally states:

- At page 5 of Bose's Response Brief (Dkt. 17, "Bose Br."), Bose states that Rezvani "is ***uniformly*** directed to ***a headset*** with the 'transition automatically' functionality, which Rezvani calls 'seamless handoff.'" Bose Br. at 5 (emphasis added).  That directly contradicts what Rezvani actually says.  In the only paragraphs of Rezvani's "Detailed Description" that describe the seamless handoff, Rezvani twice explains that "the ***handset*** can support seamless handoff" and twice states that "***the handset*** could switch a VoIP call" from one wireless network to another.  Appx2484, ¶41; Appx2485, ¶50.  In other words, Rezvani uniformly states that the handset – not the headset − supports the seamless handoff by switching a VoIP call from one network to another and, in fact, never says the headset performs those functions.

- At page 10, Bose states that Rezvani's headset "***performs*** 'seamless handoff between multiple wireless interfaces'…," citing Rezvani's abstract.  Bose Br. at 10 (emphasis added) (citing Appx2470).  The abstract does not state that the headset "performs" any seamless handoff.  Instead, the abstract states that the invention provides a headset "with" seamless handoff.  Appx2470.

- At page 12, Bose partially quotes Rezvani's ¶¶ 41 and 50 by breaking up the critical sentence in these paragraphs to insert the word "headset" in place of "handset" in the middle of the quoted sentence (Bose Br. at 12), just like its expert did in his opening declaration.  Appx1374, ¶136.  Bose's counsel apologized for this at the oral hearing before the Board (Appx699), but did it again in its response brief.

Bose even chastises Koss for purportedly "seizing" on the fact that Bose misquoted what Rezvani literally states (Bose Br. 15), as if the disclosures in the relied upon references should be ignored or are immaterial to interpreting a prior art reference.  *See* PTAB Consolidated Trial Practice Guide (Nov. 2019) ("CTPG") 36 (expert testimony "cannot take the place of a disclosure in a prior art reference, when that disclosure is required as part of the unpatentability analysis").

The fact that Bose continually treats Rezvani differently from what it literally states demonstrates the weaknesses of its positions when compared with the actual

evidence, i.e., what Rezvani literally states.  For the reasons set forth in Koss's opening brief and those set forth below, the Court should reverse the unpatentability findings for claims 11 and 12.

## II.  NO SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S DECISION THAT CLAIMS 11 AND 12 ARE UNPATENTABLE

No reasonable person would accept as adequate the testimony of Bose's expert, Dr. Tim Williams ("Williams"), that Rezvani contains typographical errors or that Rezvani includes "unambiguous disclosures" of the headset performing the seamless handoff.  Because the Board erroneously accepted Williams's testimony and the Board relied upon that testimony to find claims 11 and 12 of the '155 Patent unpatentable, the Court should reverse.

### A.    <u>No Reasonable Person Would Accept Williams's Testimony</u>

The literal words of ¶ 41 of Rezvani state "[i]n addition to simultaneous operation, the *handset* can support seamless handoff between two systems" by, for example, having "the *handset* … switch a VoIP call from" one wireless network to another.  Appx2484, ¶ 41 (emphasis added).  Rezvani's ¶ 50 repeats this explanation.  Appx2485, ¶ 50.   Rezvani's ¶¶ 41 and 50 are the only two passages in Rezvani's Detailed Description that mention seamless handoff.  In direct disregard for the actual written words, however, Bose contended in its Petition that "[t]he *headset* performs 'seamless handoff between two systems.'"  Appx210 (emphasis added).  Williams similarly stated in his first declaration that:

> Rezvani-Skulley's headphone assembly … is implemented to use Rezvani's subsystem components, is configured to perform Rezvani's "seamless handoff" (which is an automatic transition between different networks for the reasons discussed above …) whereby the ***headset*** '***switch***[*es, i.e.,* transitions] a VoIP call ***from*** [playing via] a wide-area wireless network [a first wireless network] such as … 3G [cellular] ***to*** [playing via] a local area network such as Wifi [a second wireless network].' Rezvani, [0041] ….

Appx1374, ¶ 136 (emphasis for "headset" added; other emphasis and brackets in original).

Williams admitted that he read the '155 Patent before he reviewed Rezvani and admitted that he deliberately left the word "headset" outside of any direct quotations in Rezvani about seamless handoff (Appx8926, ll.12−16), with the consequence being that his modified version of Rezvani better aligned with the claims of the '155 Patent. In doing so, Williams completely ignored that Rezvani actually states, multiple times, that the ***handset*** supports the seamless handoff. Only after institution and after Koss filed its POR, did Williams, for the first time, explain that he believed Rezvani contained multiple, allegedly obvious errors and that Rezvani meant to write "headset" in place of every instance of "handset" in ¶¶ 41 and 50. Appx7791−7802, ¶¶8−28. Bose's and Williams's assertions are implausible.

The purported typographical errors exist only in connection with the most critical words in the only paragraphs of Rezvani's description that describe the seamless handoff—the very paragraphs upon which Bose based its invalidity theory.

*See* Appx1374, ¶ 136 (citing Appx2784, ¶41 and Appx2785, ¶50). Bose's theory is even more implausible because not only does Bose allege that these errors appear twice in Rezvani's ¶ 41, but Bose contends the same exact errors occur nine paragraphs later in ¶ 50. Bose speculates that the drafter of Rezvani must have copied the alleged errors (Bose Br. 36), but that is pure attorney argument without any actual evidence to support it. In fact, Williams admitted he could not "definitively" determine the source of the alleged errors and did not bother to talk to the named inventors, the prosecuting attorneys, or the examiner for Rezvani's application. Appx8924, ll.2−20. The literal words of Rezvani simply do not disclose a headset that seamlessly handoffs between multiple wireless interfaces, but instead Rezvani allocates that functionality to the handset. Appx8784−8785 (McAlexander), ¶51.

Bose does not allege the existence of a typographical error akin to a misspelled word. Instead, Bose and its expert contend Rezvani just made numerous, obvious mistakes that, when corrected according to Bose's and Williams's self-serving theory, strengthen Bose's Rezvani-base invalidity challenges. Hindsight bias is the only plausible support for its expert's convenient conclusion. Although Bose asserts that any hindsight bias is "frivolous" (Bose Br. at 37), the facts are that Williams (1) first read the '155 Patent, then (2) read Rezvani, and then (3) determined that Rezvani had multiple errors, such that when the alleged errors are corrected,

Rezvani's modified disclosure better matches the challenged claims of the '155 Patent.  Appx8926, ll.6−16; Appx8959−8960 at 48:11−49:1.  In searching through prior art documents, including Rezvani, Williams had the benefit of knowing the elements of the '155 Patent claims, making it easier for him to discover the alleged "errors" into Rezvani.

Bose attempts to justify Williams's hindsight-based analysis by asserting that the "abrupt reference to a 'handset'" in Rezvani's ¶ 41 indicates "an obvious error, as the antecedent basis for the 'simultaneous operation' in the sentence is the simultaneous operation that paragraphs 40−41 both say the 'headset' performs." Bose Br. at 19; *see also id.* at 29.  No reasonable person would accept this reasoning as plausible for two reasons.  ***First,*** ¶ 41 also abruptly switches from a description of "simultaneous operation" to "seamless handoff," which is a different operation and, according to ¶ 41, is supported by the handset.  ***Second,*** Rezvani states three other times—once more in ¶ 41 and twice in ¶ 50— that the handset supports the seamless handoff and switches the VoIP call.  Appx2484, ¶41; Appx2485, ¶50.  If any reasonable person considered the reference to "handset" in Rezvani's ¶ 41 to be abrupt, the abruptness would be outweighed by Rezvani's repeated and consistent teachings that the ***handset*** supports the seamless handoff and switches the VoIP call. In other words, no reasonable person would accept that Rezvani meant to say "headset" in ¶¶ 41 and 50 in light of the repeated teachings that the handset supports

the seamless handoff.

Further, no reasonable person would accept Williams's testimony that Rezvani "unambiguously" discloses that the headset performs the seamless handoff for the following four reasons.

*First*, after the term "handset" in ¶¶ 41 and 50, Rezvani makes no mention of the reference character "805." Earlier in ¶ 41, Rezvani uses reference character "805" in association with the sole instance of "headset" in ¶ 41. Had Rezvani meant that the headset "can support the seamless handoff" instead of the handset, Rezvani would logically have used the reference number "805" after handset. Rezvani uses the same notation in ¶ 50, i.e., no mention of reference character 805, confirming that "handset" is not a typographical error in either paragraph.

*Second*, Rezvani's Figure 8 merely shows that the headset benefits from a seamless handoff between two wireless networks. It does not convey that the depicted headset executes, performs, or implements the seamless handoff by itself (i.e., not "automatically"). Appx8784−8785, ¶¶49−51. Once again, the actual text of Rezvani confirms that Bose and the Board misinterpreted Rezvani. Immediately following Rezvani's disclosure that the *handset* switches a VoIP call from a wide-area wireless network to a local area network, both ¶¶ 41 and 50 refer to Figure 8 as illustrating such a seamless handoff of a VoIP call. The immediate proximities of the two sentences at the end of both ¶ 41 and ¶ 50 confirms to a reasonable person

that the ***handset*** is responsible for performing and/or implementing the seamless handoff experienced by the depicted ***headset*** 805.  Appx8784−8785, ¶¶49−51.

In its Reply, Bose suggests the presence of "headset," and absence of "handset," in Rezvani's title and abstract somehow excludes the possibility for the handset to support the seamless handoff.  Bose Br. at 42.  No reasonable person would accept this as adequate in light of ¶¶ 41 and 50.  The title does not mention seamless handoff at all, much less state that the headset performs it.  Appx2470. Relatedly, Rezvani's abstract attributes no such "seamless handoff" ability to the headset and does not "expressly" disclose what the headset does or does not perform. Instead, the abstract literally states that "[t]he invention provides a multiple-antenna wireless multi-media headset with high fidelity sound, peer-to-peer networking capability, [and] seamless handoff between multiple wireless interfaces..."  *Id.*  As such, the abstract lacks description of what ***performs*** the seamless handoff.

***Third***, Bose's argument that "Rezvani never describes a 'handset' with the ability to support 'simultaneous operation'" does not provide sufficient support for the Board's interpretation of Rezvani.  Bose Br. at 19 (citing Appx7796−7797, ¶19). As an initial matter, Rezvani also never describes the headset as supporting the seamless handoff; it only identifies the handset as being able to "support" the seamless handoff and switching the VoIP call between wireless networks. Appx2484, ¶41; Appx2485, ¶50.  More importantly, Williams testified that a person

skilled in the art in 2008 would have understood that a handset, such as a cellular phone, could hand off between networks. Appx8931−8934 at 19:10−22:10. While Bose asserts that Williams did not agree that ¶¶ 41 and 50 make sense as written (Bose Br. at 36), ¶¶ 41 and 50 undeniably state that the handset supports the seamless handoff and Williams testified that a handset, like a cell phone, supported seamless handoff in 2008. Paragraphs 41 and 50 do not use some arbitrary word for the object that supports the seamless handoff; they instead use a word—"handset"—for a device that was known at the time to support seamless handoff.

*Finally*, the Court should reject Bose's misleading assertion that Koss made a strategic decision in not having its expert, McAlexander, opine on Rezvani's alleged typographical errors. Bose Br. at 17. McAlexander testified that Rezvani means what it says. He testified that "[b]oth ¶[0041] and ¶[0050] of Rezvani explain that the handset – *not the headset* – supports the seamless handoff." Appx8784, ¶48 (emphasis in original). He elaborated that, "Rezvani's Figure 8 and its related description is consistent with ¶¶[0041] and [0050] and does not support Petitioner's assertion that the headset … performs the seamless handoff." *Id.*, ¶49. He further testified that "FIG. 8 and its related description illustrates different modes of operation, but does not disclose, teach, or suggest that Rezvani's *headset* supports the seamless handoff, for that is undoubtedly reserved for the handset in Rezvani's description." Appx8784−8785, ¶51 (emphasis in original). As such, Koss is not

"left with only its attorneys' interpretation of ¶ [0041]" (Bose Reply at 34) and McAlexander's testimony shows that no reasonable person would accept Bose's typo theory, as the Board erroneously did.  Appx41.

Moreover, Bose admittedly did not assert that Rezvani had the alleged errors until *after* Koss filed its POR.   Because of Bose's actions, the Board's rules prevented Koss from submitting further testimony to counter Bose's late justification for ignoring Rezvani's actual text.   CTPG 73 ("The sur-reply may not be accompanied by new evidence other than deposition transcripts of the cross-examination of any reply witness.").   Thus, McAlexander lacked opportunity to address the specific after-the-fact assertions made by Williams.

In considering the grammatically accurate and technical feasibility of the system Rezvani literally describes, McAlexander was unable to find a reason "for burdening Rezvani's headset with an attribute Rezvani itself reserves for the handset…."  Appx8786, ¶54.  Bose argued that McAlexander's statement was "puzzling as it was directed at an obviousness theory Bose never advanced" and is "an argument premised on misreading paragraphs 41 and 50."  Bose Br. at 17.  However, McAlexander's conclusion is the common sense interpretation of Rezvani in light of ¶¶ 41 and 50, and in light of the absence of any other express disclosure attributing the seamless handoff to the headset.  No reasonable person would have a view different from McAlexander's.

Considering all of the facts of the case, including the untimeliness of Bose and Williams's typographical error theory, no reasonable person would accept Williams's testimony as adequate. Consequently, it is evident that the Board erred in finding substantial evidence to find claims 11 and 12 of the '155 Patent unpatentable.

## B.    Rezvani Does Not Satisfy Limitation 1.g if Rezvani is Assumed Not to Include Errors

Koss's opening brief explained that (i) the Board erred as matter of law in its construction of "transition automatically" in limitation 1.g. in claim 1 of the '155 Patent, (ii) that the term should be construed to mean "transition without external intervention," such as from a human operator or another device, and (iii) that Rezvani does not teach or suggest limitation 1.g under the legally proper construction for "transition automatically." Koss Br. at 29−38. Bose agrees that "transition without external intervention" is the proper construction (although Bose also asserts that no expression construction is necessary). Bose Br. at 48.

In light of the parties' agreed-upon construction, Koss agrees that the two-step obviousness analysis devolves to the second step of comparing the properly construed claim to, in this case, Rezvani to determine whether Rezvani satisfies limitation 1.g. If Rezvani's alleged errors in ¶¶ 41 and 50 are not corrected, Rezvani clearly does not satisfy limitation 1.g because ¶¶ 41 and 50 are the only paragraphs of Rezvani's description that mention seamless handoff and that mention switching

- 11 -

a VoIP call from one wireless network to another, and those paragraphs repeatedly identify the ***handset*** as performing these functions. Appx2484, ¶41; Appx2485, ¶50; Appx8784−8785, ¶¶49−51. No other portion of Rezvani's description identifies a component other than the handset as supporting the seamless handoff or switching a VoIP call from one wireless network to another. Thus, any network transition by Rezvani's headset is "supported" by the handset to which the headset is connected; therefore Rezvani's headset transitions networks ***with external intervention*** from the handset. Therefore, Rezvani does not satisfy limitation 1.g. Appx8785−8788, ¶¶52−61.

Bose's counter-arguments are founded on its misplaced assertions that Rezvani's abstract and a single claim (i.e., claim 36) teach that the headset "***performs***" the seamless handoff. Bose Br. at 51−52. Neither the abstract nor claim 36 describe Rezvani's headset as performing any seamless handoff. The abstract merely states that the "invention provides a multiple-antenna wireless multimedia headset ***with*** … seamless handoff." Appx2470 (emphasis added). At no point does the abstract, or any other portion of Rezvani, state that the headset ***performs*** a seamless handoff – let alone ***automatically***. Claim 36 merely recites a headset that "includ[es] means for seamless handoff" between two networks. Appx2486. Such language is deficient at least for the same reasons as the abstract.

Further, as Koss explained before the Board, claims 32 and 36 are written in

means-plus-function format and, as detailed extensively herein and in Koss's opening brief, there is no disclosure in Rezvani linking the claimed function to any structure in the headset. Appx734, ll.5–18; *see also B. Braun Med., Inc. v. Abbott Labs.*, 123 F.3d 1419, 1424 (Fed. Cir. 1997) ("structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim" and "[t]his duty to link or associate structure to function is the quid pro quo for the convenience of employing" means-plus-function claim terms). No reasonable person would accept that claims 32 and 36 disclose that the headset performs the seamless handoff. Koss did not forfeit this argument (*see* Bose Br. at 43–44) because Koss raised it before the Board. Appx734, ll.5–18; *Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1342 (Fed. Cir. 2016) ("An issue is preserved for appeal, however, so long as it can be said that the tribunal was fairly put on notice as to the substance of the issue.") *overruled on different grounds by Aqua Prod., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) (citation omitted).

Finally, Bose's reliance on the prosecution history in an EPO application related to the '155 Patent (Bose Br. at 52–53) is misplaced. Koss's response to the European search report for the EPO application did not amount to an admission that the subject matter of limitation 1.g was disclosed in Rezvani as Koss's claim amendments in the EPO were driven by unique aspects of EPO patent law, such as

inserting "characterized in that" into the claims.   Appx8555; Appx8567−8573. Further, Koss did not accept the findings of the European search report as evidenced by its filing of a divisional application that resulted in another European patent for Koss.  Appx8700−8730.  For these reasons, the Board correctly found that Koss's "actions in response to the European search report do not amount to an admission that the subject matter of limitation 1.g was disclosed in Rezvani." Appx447.  Furthermore, the Board concluded that even if the Board gave some weight to the European prosecution evidence, the Board did "not find [Koss's] actions constitute a 'blatant admission.'"  *Id*.

For these reasons, if Rezvani is determined not to include the numerous errors that Bose asserts it has and that the Board found that it has, the Court should reverse the rejections of claims 11 and 12 because the Board's erroneous findings that Rezvani includes numerous correctable errors harmed Koss.

### C.    The Board's Alternative Obviousness Theory is Flawed

At page 44 of the Final Written Decision ("FWD"), the Board analyzed whether "reserving the 'seamless handoff' of Rezvani to the 'handset' would have prevented a person of ordinary skill from understanding that the claimed 'headset' [i.e., the Rezvani headset that Bose asserts performs the seamless handoff] would have been modified to perform the handoff."  Appx44.  The Board focused on whether a "person of ordinary skill" would have been "prevented" from modifying

Rezvani's headset to "perform the handoff" if Rezvani reserved the "'seamless handoff' to the 'handset'" as stated in Rezvani's ¶¶ 41 and 50. In other words, the Board performed a quintessential obviousness assessment under § 103. *See Innogenetics, N.V. v. Abbott Labs.,* 512 F.3d 1363, 1374 (Fed. Cir. 2008) (for a claim to be obvious, "some kind of motivation must be shown ... so that the jury can understand why a person of ordinary skill would have thought of either combining two or more references or modifying one to achieve the patented method"); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007) ("If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability."); Bose Br. at 40 (acknowledging that the Board's sentence might have "used language suggestive of an obviousness theory").

Bose concedes, however, that it "never argued (and the Board never found) that it would have been obvious to modify Rezvani's headset to include the 'seamless handoff' functionality that Koss says Rezvani reserves for handsets." Bose Br. at 38. Koss accepts Bose's concession and, as such, this Court need not consider the Board's alternative obviousness theory at pages 44−45 of the FWD.

To the extent that this Court considers the Board's alternative theory, it should reject the Board's conclusion for the two main reasons set forth in Koss's opening brief at pages 39 to 44. *First*, contrary to Bose's assertions (*see* Bose Br. at 38−39), no reasonable person would accept as adequate Williams's reply testimony about

the alleged "unambiguous disclosures" in Rezvani that the headset performs the seamless handoff because the disclosures in Rezvani cited by Williams do not disclose that the headset executes any automatic transition or seamless handoff. *See* Koss Br. at 39−41 (detailing the alleged "unambiguous disclosures" in Rezvani that Williams cited). To that end, McAlexander explained why moving the seamless handoff functionality from the handset to the headset would not have been obvious. Appx8786−8787, ¶¶55−58.

*Second*, the Board performed a legally improper obviousness analysis. Koss Br. at 42−44. Bose did not counter this argument by Koss because, according to Bose, the "Board did not adopt an obviousness argument Bose never made." Bose Br. at 40.

Thus, the Board's alternative theory does not provide a basis to uphold the Board's determination that claims 11 and 12 are unpatentable.

### D.    The Board Abused its Discretion by Considering Williams's Reply Declaration

None of Bose's arguments undermine Koss's assertion the Board abused its discretion by considering Williams's reply (second) declaration.

Bose first relies on a nonprecedential opinion from the Court in *AMC Multi-Cinema, Inc. v. Fall Line Pats., LLC*, No. 2021−1051, 2021 WL 4470062 (Fed. Cir. 2021) for the uncontroverted point that if a petition asserts that a claim requirement is met, provides a reason that the assertion is true, and cites evidentiary support for

that reason, the petitioner may include in its reply material that fairly adds confirmation that the initially presented material does in fact support the assertion is not prohibited new material.  Bose Br. at 53−54.  That standard, however, does not apply here.  Williams did ***not cite evidentiary support*** from Rezvani in his original testimony that Rezvani teaches limitation 1.g.  His original testimony relied on an alternative version of Rezvani, i.e., a version that replaces all instances of "handset" with "headset" in Rezvani's ¶¶ 41 and 50, which are the main two paragraphs that Williams relied upon as allegedly "meeting" limitation 1.g. in Rezvani.  Appx1374, ¶136.  Williams's alternative versions of ¶¶ 41 and 50 were not part of the record when the Petition was filed because the actual evidence shows that in Rezvani the handset supports the seamless handoff and switches the VoIP call between wireless networks.  Appx2484, ¶41; Appx2485, ¶50.  Therefore, the standard in *AMC Multi-Cinema* does not apply and, as such, Williams's reply declaration is prohibited new material; and the Board abused its discretion by considering it.

Bose's other arguments likewise fail.  ***First***, the Court should reject Bose's post-hoc characterization of Williams's cross-examination testimony as to the genesis of the errors in Bose's Petition and in Williams's original testimony because it is incredible, unreasonable, and deceptive.  Appx42.  Williams testified that when he quoted the critical last sentence of Rezvani's ¶ 41 in ¶ 136 of his original declaration (Appx1374; Appx8980), he did not include "headset" in the quotation,

even though Rezvani's ¶ 41 uses "handset" instead of "headset," because he "interpreted the words of Rezvani as meaning that the headset is the thing that switches." Appx8959. Bose did not ask clarifying questions about this admission during Williams's cross-examination. Appx8959−8960; *see also* Bose Br. at 55. By consciously not including "headset" in the quotation in his declaration, Williams clearly knew that Rezvani's ¶ 41 states that the ***handset*** is the thing that switches. No reasonable person would accept that Williams did not know at the time of his original declaration that Rezvani contained the alleged errors in light of his use of quotations in ¶ 136 of his original declaration, and the Board abused its discretion by considering it.

***Second***, Bose's typo theory was prejudicial to Koss because Bose did not present any evidence supporting the theory until after institution and after Koss filed its POR (Appx632; Appx7790), at which point Koss was precluded under the Board's rules from submitting counter-evidence. CTPG 73. Bose did not present any evidence that Rezvani was error-riddled prior to Koss's POR. Therefore, Koss's witnesses had no basis to assess Bose's after-the-fact basis for asserting that Rezvani contains the multiple errors Bose alleges that it has and that Rezvani does not otherwise mean what it literally states.

***Third***, Bose's argument that Koss waived its argument that the Board should disregard Williams's reply testimony about Rezvani's "unambiguous disclosures"

of the headset performing seamless handoff (Bose Br. at 57−58) is misplaced. Williams's reply testimony that Rezvani allegedly "unambiguously discloses" the headset performing the seamless handoff formed the foundation for his theory that Rezvani's ¶¶ 41 and 50 include errors.  Appx7791−7794, ¶¶ 8−14.  In other words, Williams theorized that Rezvani's ¶¶ 41 and 50 include errors because Rezvani allegedly teaches elsewhere that the headset performs the seamless handoff.  Koss objected to the belated "typo" theory testimony, specifically citing ¶¶ 8−28 of Williams's reply testimony as being objected to (Appx632), thereby putting the Board on notice as to the objected-to testimony.[1]  Therefore, Koss did not waive its right to appeal that the Board abused its discretion in considering Williams's reply testimony about Rezvani's "unambiguous disclosures" of the headset performing seamless handoff.  *Nike, supra*, 812 F.3d at 1342.

**Finally**, in any event, the Board abused its discretion by accepting Williams's testimony that Rezvani contains "unambiguous disclosures" of the headset performing seamless handoff because, in fact, Rezvani states repeatedly and consistently that the handset performs the seamless handoff.  The only paragraphs in Rezvani's "Detailed Description" that mention a "seamless handoff" are ¶¶ 41

---

[1] Bose identified ¶¶ 8−14 as Williams's reply testimony about the unambiguous disclosures.  Bose Br. at 57.  Koss objected to ¶¶ 8−28 of Williams' reply testimony (Appx632), which includes ¶¶ 8−14.

and 50. Both paragraphs state that the ***handset*** "can support seamless handoff" and both paragraphs give an example of how the handset supports the seamless handoff, i.e., "the handset could switch a VoIP call from a wide-area wireless network … to a local area network …." Appx2484, ¶41; Appx2485, ¶50. Rezvani's "Detailed Description" never states that the headset supports the seamless handoff or that it could switch a VoIP call. Consequently, there is no evidence on which the Board could rationally conclude that Rezvani unambiguously discloses that the headset performs the seamless handoff. *See* Appx8784−8795, ¶¶48−50 (McAlexander testifying that Rezvani teaches that the handset performs the seamless handoff).

Therefore, the Board abused its discretion in considering ¶¶ 8−28 of Williams's reply declaration. Without ¶¶ 8−28 of Williams's reply declaration, there is no evidence to show that Rezvani includes numerous errors.

## III.   *LG ELECS.* AND *YALE* DID NOT CORRECT A PRIOR ART REFERENCE TO MAKE A PATENT CLAIM UNPATENTABLE

Bose and the Board agree that Rezvani's ¶¶ 41 and 50 include allegedly obvious errors (Bose Br. at 18; Appx41), and, thus, those erroneous disclosures should be disregarded. Koss is not aware of, and Bose has not cited, any *inter partes* patent proceeding, such as an IPR, *inter partes* reexamination, or litigation, where in an adversarial setting, a tribunal corrected a prior art reference to make the claim in question unpatentable.

Importantly, in neither *LG Elecs. Inc. v. Immervision, Inc.*, 39 F.4th 1364

(Fed. Cir. 2022) nor *In re Yale*, 434 F.2d 666 (C.C.P.A. 1970) did this Court find claims unpatentable after correcting alleged obvious errors in a prior art reference because, as stated in *LG Elecs.*, "the errant information cannot be said to disclose subject matter." *LG Elecs.*, 39 F.4th at 1372.   Indeed, the opposite happened in *LG Elecs.*; this Court affirmed the Board's correction of errors in a prior art reference (Tada) to find the IPR challenger had not proven the challenged claims to be unpatentable. *Id.* at 1372−1373.   Contrary to Bose's implication (Bose Br. at 60), this Court did not assess whether corrections to Tada would still result in the challenged claims being found unpatentable.  Instead, the Court affirmed the Board because Tada's Table 5 had to be ignored, stating "Tada's Table 5 includes an obvious error of a typographical or similar nature that would have been apparent to one of ordinary skill in the art, who would have substituted it with the correct information and, thus, that Table 5 cannot be said to disclose" the critical feature of the challenged claim. *Id.* at 1373.

Similarly, while not involving an *inter partes* matter, in *Yale* the Court of Customs and Patent Appeals ("CCPA") reversed a decision from the Patent Office Board of Appeals that had affirmed a rejection of claims in an application after determining that the prior art reference was erroneous. *Yale*, 434 F.2d at 668−669. The CCPA did not assess whether the claims of the application would nevertheless be unpatentable if the prior art reference was corrected. *Id.*

Similarly, the Board and its predecessor (the Board of Patent Appeals and Interferences) have repeatedly refused to find a claim unpatentable based on an allegedly obvious error in a prior art reference where the error was disputed and/or repeated. *See e.g. In re Fanning*, Appeal No. 2012−011674, 2014 WL 4228078 (P.T.A.B. Aug. 25, 2014); *In re Barthelemy*, Appeal No. 2003−2023, 2004 WL 4979042 (B.P.A.I. Jan. 21 2004); *In re Darr*, Appeal No. 2011−011436, 2013 WL 5740866 (P.T.A.B. Oct. 21, 2013); *In re Nutalapati*, Appeal No. 2018−004192 (P.T.A.B. July 29, 2019); *In re Castan*, Appeal No. 2016−008209 (P.T.A.B. Oct. 5, 2017); *In re Burger*, Appeal No. 2009−004196 (B.P.A.I. Oct. 27, 2009) (rejected for other reasons). The cases where the Board or its predecessor found a claim unpatentable based on a prior art reference with errors involved isolated typographical errors that in some cases were not even disputed. *In re Ehrlich*, Case No. 2009−005874, 2010 WL 1250670 (B.P.A.I. Mar. 9, 2010) (correcting an undisputed error); *In re Nicolaos*, Appeal No. 2009−00189, 2009 WL 3048590 (B.P.A.I. Sep. 23, 2009) ("absorbent" misspelled once); *In re Masini-Eteve*, Appeal No. 2017−003027 (P.T.A.B. Nov. 11, 2018) (correcting an undisputed error); *Incase Designs Corp. v. Tech Shell, Inc.*, Appeal No. 2013−009127 (B.P.A.I. Sep. 13, 2013) (alleged error corrected by immediately following sentence in prior art reference); *Incase Designs Corp. v. Tech Shell, Inc.*, Appeal No., 2014−002671 (B.P.A.I. May 30, 2014) (same). None of these cases involved correction of multiple alleged errors

in the prior art reference, as is the case here with Rezvani.

Thus, the erroneous portions of Rezvani, that is ¶¶ 41 and 50 thereof, should be ignored rather than corrected.

## IV.   SUBSTANTIAL EVIDENCE SUPPORTED THE BOARD'S DETERMINATION THAT PELLAND DOES NOT ANTICIPATE THE CHALLENGED CLAIMS

Bose's alternative ground for affirmance turns on the following question of fact: whether the PCT Application, identified as "Pelland" (Appx1907−1952)[2], reasonably conveys to those skilled in the art that the inventors possessed all of the elements of claim 1, and more particularly the "transition automatically" limitation (i.e., limitation 1.g).  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc); Appx58.  Bose bore the burden of showing by a preponderance of the evidence that the PCT Application lacks the necessary support. 35 U.S.C. § 316(e); *Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1348 (Fed. Cir. 2021).

The Board found that Bose had not met its burden and ample evidence supports the Board's determination.  Appx51−59.  There is no basis, therefore, to reverse the Board's determination on Ground 1 of Bose's Petition.  *See OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1381 (Fed. Cir. 2019) (fact findings reviewed

---

[2] "Pelland is the published version of the PCT Application."  Appx52.

for substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and asks whether a reasonable fact finder could have arrived at the Board's decision based on an examination of the record as a whole).

### A.     <u>The Board's Decision</u>

Before the Board, Bose argued that the PCT Application limits the automatic transitions to (1) transitions when out of range of a first network (2) between ad hoc and infrastructure networks.  Appx54 (citing Appx196).  The Board found in Koss's favor on both points, ultimately concluding that "the '155 Patent is entitled to the filing date of the PCT Application" such that "Pelland is not prior art to claim 1 …." Appx55−59.

In this appeal, Bose has waived its second argument, relying exclusively on the assertion the PCT Application is limited to an automatic transition due to a lost connection.  Bose Br. at 63−64.  The Board provided multiple legally and factually supported reasons why Bose failed to carry its burden to limit the scope of the PCT Application as asserted by Bose.  *First*, the Board rejected Bose's reliance on cases like *Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315 (Fed. Cir. 2017) because the PCT Application's written description "does not expressly limit what 'transition automatically' supports …."  Appx55.

*Second*, the Board concluded that the PCT Application's description of the

automatic transitioning process, in connection with Figure 6 of the PCT Application, "is not limited to lost connections …." *Id.* Bose's expert, Williams, testified that an example of a transition that could occur without a lost connection is if audio received over the second network is higher priority than audio from the first network. Appx58 (citing Appx1330−1331, ¶96). The Board found, however, that the PCT Application describes that precise example in connection with Figure 6, thereby proving that the PCT Application is not limited to lost connections. Appx58 (citing Appx1920−1921).

**Third**, the Board rejected Williams's testimony because it focused on the wrong question. The Board found that Williams concentrated on a "focus" of the PCT Application—that allegedly all embodiments focus on transitions between ad hoc and infrastructure networks due to a lost connection—when the operative question is whether the description of the PCT Application reasonably conveys to a person skilled in the art the "transition automatically" limitation. Appx58 (citing Appx1328−1336, ¶¶93−99). Thus, Bose failed to prove what it was required to prove under its burden as petitioner.

**Finally**, the Board was "not persuaded that a person of ordinary skill would have required more than the lost connection example plus the suggestion that network priority would also be a consideration" because the PCT Application's description "conveyed additional understanding to a person skilled in the art."

Appx58−59.   In other words, the teachings of the PCT Application about prioritization-based transitioning based on signal strength would have reasonably conveyed to a person skilled in the art that the automatic transitions are not limited to lost connections.

### B.     Ample Evidence Supports the Board's Conclusion

The evidence of record, particularly the PCT Application itself (Appx1907−1952), provides sufficient support for the Board's determination.  The PCT Application does not unambiguously limit the invention to transitioning between wireless networks when a connection is lost.  The loop at Figure 6 of the PCT Application shows that when the headphone assembly is not communicating via an ad hoc wireless network (block 61), it can transition to a highest priority infrastructure wireless network (block 63) and keep transitioning to other infrastructure wireless networks by priority order when the current infrastructure wireless network is not "ok" (block 65, feedback back to blocks 61 and 63).  Appx1920−1921, 12:24−13:19; Appx1947, Fig. 6.

The PCT Application further elaborates that the headphone assembly determines whether it can communicate over a network "if the strength of the wireless signals … exceed some minimum threshold" and switches networks if, for example, "the signal strengths degrade below a minimum threshold level."  Appx1920−1921, 12:30−13:9.   Thus, as the Board correctly found, the PCT

- 26 -

Application explains that signal strength can be a factor in the automatic transitioning, which does not have to constitute a lost connection. Appx55 (Board finding that the PCT Application's description is not limited to lost connections and that the prioritization may be based on signal strength). The Board's finding also demonstrates that Bose is wrong when it argues that the PCT Application does not show any other embodiments besides a lost network connection. Bose Br. at 66−67. The PCT Application discloses switching based on signal strength. Appx55. In light of that disclosure, as the Board found, Bose cannot carry its burden to establish that the PCT Application fails to convey to any person skilled in the art limitation 1.g.

Bose's expert limited his testimony to the alleged "focus" of the PCT Application (and the ''155 Patent, which has the same specification). Appx1329−1330, ¶95 (Williams's testimony about "focus" of the summary and "focus of all embodiments"). As the Board correctly held, however, in rejecting Williams's testimony, the alleged "focus" of a specification is immaterial because a claim may be broader than the specific embodiment disclosed in the specification. *See In re Rasmussen*, 650 F.2d 1212, 1215 (Fed. Cir. 1981); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 993 (Fed. Cir. 1999) (claims not limited to particular disclosed embodiment unless claims are unambiguously limited to embodiment); *In re Vickers,* 141 F.2d 522, 525−526 (C.C.P.A. 1944) (in predictable arts, general rule is to seldom show more than one embodiment, yet applicant is

allowed to claim more than the specific embodiment shown); *Holigic, Inc. v. Smith & Nephew, Inc.*, 884 F.3d 1357, 1361 (Fed. Cir. 2018) (disclosure of a species provides written descriptive support for a claimed genus where invention is in predictable field).  Indeed, by hyper-concentrating on the supposed "focus" of the PCT Application, Williams failed to account for disclosure outside what he defined as the focus, such as that the PCT Application teaches transitioning networks based on signal strength, i.e., if the signal strength degrades below "some minimum threshold."  Appx1920, 12:29−30.

Thus, substantial evidence supports the Board's determination that Pelland does not anticipate the challenged claims.

## C.   <u>Bose Relies on Easily Distinguishable Case Law</u>

The Court should reject Bose's reliance on several Federal Circuit decisions that are easily distinguishable.  As the Board found, the PCT Application's use of the phrase "the present invention" does not limit its disclosure.  The PCT Application rigorously qualifies such "present invention" disclosures with phrases like "in various embodiments," "according to one embodiment," and "[i]n one general aspect," etc. (Appx55; Appx154, 1:66, 2:55; Appx156, 6:28−29; Appx158, 10:49−51), thereby distinguishing *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010), where the "present invention" disclosures were not qualified like in the PCT Application.

Furthermore, the Court can distinguish *ICU Med., Inc. v. Alaris Med. Sys. Inc.*, 558 F.3d 1368 (Fed. Cir. 2005) and *LizardTech, Inc. v. Earth Res. Mapping Inc.*, 424 F.3d 1336 (Fed. Cir. 2005), cited by Bose (*see* Bose Br. at 64) because the PCT Application is not limited only to a single embodiment, e.g., transitions for a lost connection.  Instead, the PCT Application also discloses transitions based on signal strength level.  Appx55 (citing Appx1921, ll. 11−15).  Indeed, this Court has distinguished *ICU* and *LizardTech* in circumstances like this where the specification does not clearly limit the invention to a single embodiment.  *See Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1351−53 (Fed. Cir. 2011) (affirming jury verdict that claim in continuation that deleted phrase from parent was not invalid for lack of written description); *ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d 1336, 1341−42 (Fed. Cir. 2016) (distinguishing *ICU* because the specification did not "clearly limit[]" the scope of the invention).

For these reasons, there is sufficient evidence supporting the Board's determination that Pelland does not qualify as prior art.

## V.    CONCLUSION

This Court should reverse the Board's erroneous invalidation of claims 11 and 12 of the '155 Patent.


Dated: March 17, 2023                    Respectfully submitted,

                                         K&L GATES LLP

                                         /s/ *Mark G. Knedeisen*
                                         Mark G. Knedeisen
                                         Christopher M. Verdini
                                         Michelle Weaver
                                         Ragae Ghabrial
                                         Brian P. Bozzo
                                         Laurén Murray
                                         K&L Gates LLP
                                         210 Sixth Ave., Pittsburgh, PA 15222
                                         Ph. 412−355−6500
                                         mark.knedeisen@klgates.com
                                         christopher.verdini@klgates.com
                                         michelle.weaver@klgates.com
                                         ragae.ghabrial@klgates.com
                                         lauren.murray@klgates.com
                                         brian.bozzo@klgates.com

                                         *Attorneys for Appellant Koss Corporation*

# UNITED STATES COURT OF APPEALS FOR
# THE FEDERAL CIRCUIT

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**       2022–2090

**Short Case Caption:**      Koss Corp. v. Bose Corp.

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

     The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☒     the filing has been prepared using a proportionally-spaced typeface and includes_____6843___words.

☐     the filing has been prepared using a monospaced typeface and includes ___ lines of text.

☐     the filing contains_____pages /_____words /_____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No._____).

Dated:   March 17, 2023      Signature:   */s/ Mark G. Knedeisen*

                           Name:     Mark G. Knedeisen